Ronald D. WATSON, Appellant,

v.

**BRAZOS ELECTRIC POWER COOPERATIVE, INC.,**
Appellee.

No. 10–95–048–CV.

Court of Appeals of Texas,
Waco.

March 20, 1996.

Rehearing Overruled April 17, 1996.

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

Steven H. Stodghill, Lynn, Stodghill, Melsheimer & Tillotson, L.L.P., Dallas, David B. Christian, Meridian, for appellant.

Theron Hale, Murphy, Moore & Bell, Fort Worth, for appellee.

Before CUMMINGS and VANCE, JJ.

## OPINION

PER CURIAM.

Ronald Watson sued Brazos Electric Power Cooperative, Inc. (Brazos) claiming that it was responsible for a fire that ravaged approximately 300 acres of his ranchland. The jury failed to find that any negligence of Brazos proximately caused the fire. After the court overruled Watson's motion for a judgment notwithstanding the verdict, he appealed.

Although Watson pled several theories of recovery, the court charged the jury only on his negligence claim—refusing to submit questions, instructions, and definitions on his other causes of action: nuisance, trespass, negligence per se, and gross negligence. The court also refused to submit Watson's instructions on "spoliation of evidence" and on the standard of care applicable to Brazos. The court's alleged charge errors form the

basis of Watson's seven points of error. We agree with Watson that the court erred in refusing to submit an instruction on spoliation, a question and definition on trespass, and a question and definition on gross negligence. Therefore, we will reverse and remand for a new trial.

## BRIEF FACTUAL BACKGROUND

In October of 1992, Watson purchased approximately 600 acres of land in Bosque County which he intended to use for a family cattle-ranching operation, wildlife sanctuary, and weekend getaway. Brazos had an easement across Watson's property that entitled it to place poles on the property and string electric lines across it.

On the morning of July 13, 1993, a cross-arm of one of Brazos' poles on Watson's property "gave way," allowing a sixty-nine kilovolt powerline to dangle above, or come into contact with, the ground. Electricity from the dangling line started a fire on Watson's property.

Meridian Volunteer Fire Fighters arrived and fought the fire. Approximately five acres of Watson's land initially burned. A Brazos crew arrived to repair the failed cross-arm while the fire fighters were there and remained on the scene after the fire fighters left. When the repairs to the cross-arm were complete, the crew left Watson's property. Sometime later that morning, the fire rekindled and ultimately burned approximately 300 acres.

One of the volunteers testified that the fire fighters believed the fire had been ·extinguished, but that it was still smoldering when they left. He also testified that they left the scene because the Brazos repair crew assured them that they (Brazos) would "be back in touch with us ... so we could make sure that the fire did not spread." The fire fighter testified that, to his knowledge, Brazos never contacted them again.

## SPOLIATION OF EVIDENCE

In his seventh point, Watson alleges that the court should have instructed the jury on "spoliation of evidence" because the issue was raised by the written pleadings and the evidence.

Texas Rule of Civil Procedure 278 provides:

> The court shall submit the questions, instructions and definitions ... which are raised by the written pleadings and the evidence. ... A judgment shall not be reversed because of the failure to submit other and various phases or different shades of the same question. Failure to submit a question shall not be deemed a ground for reversal of the judgment, unless its submission, in substantially correct wording, has been requested in writing and tendered by the party complaining of the judgment.... Failure to submit a definition or instruction shall not be deemed a ground for reversal of the judgment unless a substantially correct definition or instruction has been requested in writing and tendered by the party complaining of the judgment.

TEX.R.CIV.P. 278.

Watson's theory is that the cross-arm failed because its integrity had been compromised by woodpecker holes. He contends that Brazos was negligent in failing to conduct reasonable inspections of its poles that would have detected the holes. The testimony at trial established that Brazos employees, knowing that the cross-arm had been involved in a fire and that Watson was making a claim for damages, took the cross-arm into their possession and inspected it. Eventually, without taking pictures or otherwise preserving information about the break, Brazos employees allowed the cross-arm to be destroyed. Watson claims that the condition of the cross-arm was the single most important issue before the jury relevant to the negligence claim, that a presumption of spoliation was raised by the evidence, and that the instruction on spoliation was necessary to aid the jury in interpreting the legal effect of the destruction of the cross-arm.

Brazos argues that its failure to produce the cross-arm in this instance does not give rise to the presumption, and, even if it did, the court's failure to give the instruction was harmless because Watson was permitted to

argue spoliation during final argument. We disagree.

■■■ "[F]ailure to produce evidence within a party's control raises the presumption that if produced it would operate against him, and every intendment will be in favor of the opposite party." *Brewer v. Dowling*, 862 S.W.2d 156, 159 (Tex.App.—Fort Worth 1993, writ denied); *H.E. Butt Grocery Co. v. Bruner*, 530 S.W.2d 340, 343 (Tex.Civ.App.—Waco 1975, writ dism'd). This presumption arises whenever the party not in possession of the evidence has introduced evidence harmful to the party who had control of the evidence. *Brewer*, 862 S.W.2d at 159. "Under such circumstances, the failure of the [party in control of the evidence] to rebut the harmful evidence with evidence within its control *raises a presumption* that the unpresented evidence would also be unfavorable to the nonproducing party." *Id.*

Watson offered the testimony of Dan Fowler, the owner of an adjoining tract of land. Fowler testified that when he arrived on the morning of the fire, he observed that the fallen cross-arm had a "woodpecker hole in it that had eaten away half or better of the cross arm." He also testified that the hole was three to four inches in diameter. This testimony is clearly harmful to Brazos. Brazos, at one time, had possession of the critical piece of evidence, inspected it, and then allowed it to be destroyed. Its failure to produce the cross-arm, after Watson introduced evidence of a three to four inch woodpecker hole, raised the presumption of spoliation. *Id.*

The only evidence Brazos offered to "rebut" Watson's evidence of the woodpecker hole in the cross-arm was the testimony of its employees to the effect that the break was "unusually clean," and that no woodpecker holes were observed. Brazos' manager of operations and planning, William Townsend, testified that he did not take any pictures of the cross-arm when inspected it and that he made no effort to preserve it. He stated that he "didn't think [he] had any reason to keep [the cross-arm] even though [he] knew there had been a fire out at Mr. Watson's property and Brazos people had been in contact with him concerning damages[.]"

The evidence offered by Brazos is not the type of rebuttal evidence that precludes the application of the spoliation presumption. These facts are distinguishable from those in *Brewer*, where, although a fetal monitor strip was not produced by the defendants, they produced the information contained on the strip: hospital charts and nurse's notes—made contemporaneously with the strip and at a time before any medical problems had arisen so that no doubt was cast on their trustworthiness—were introduced into evidence. *Id.* Further, the charts and notes supported the defendant's contention that the unproduced fetal monitor strip did not contain evidence harmful to it. *Id.*

Spoliation was raised by the pleadings and the evidence, and the jury should have had the benefit of an instruction to properly evaluate the facts according to the charge. Tex. R.Civ.P. 278; *Elbaor v. Smith*, 845 S.W.2d 240, 243 (Tex.1992). Since Brazos did not produce the cross-arm, in following a spoliation instruction, the jury would have to presume that the cross-arm contained a woodpecker hole three to four inches in diameter as Fowler testified. That evidence raises questions of fact regarding whether Brazos should have detected the hole, and if so, whether its failure to do so proximately caused the cross-arm to break and start the fire. Thus, the court erred when it failed to include Watson's substantially correct request for an instruction on the presumption. *Id.*

■■■ Brazos' contention that no harm resulted because Watson addressed the issue of spoliation during final argument to the jury is not persuasive. "The court's instructions become the law of the case and are to be accepted by the jury as the guide on which they must rely." *Charter Oak Fire Ins. Co. v. Taylor*, 658 S.W.2d 227, 230 (Tex.App.—Houston [1st Dist.] 1983, no writ); *Texas Power & Light Company v. Lovinggood*, 389 S.W.2d 712, 717 (Tex.Civ.App.—Dallas 1965, writ ref'd n.r.e.). Argument by counsel will not replace instruction by the court. *See id.* We cannot say that such error was harmless.

*Id; Dept. of Human Services v. Hinds,* 904 S.W.2d 629, 637 (Tex.1995).

Point seven is sustained.

## NUISANCE

■ Watson claims in his first point that the court erred in denying his motion for judgment notwithstanding the verdict (JNOV), or alternatively, in refusing to submit his definition and question on his nuisance claim. Nuisance has been defined in Texas jurisprudence as "a condition which substantially interferes with the use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities attempting to use and enjoy it." [1] *Bible Baptist Church v. City of Cleburne,* 848 S.W.2d 826, 829 (Tex.App.—Waco 1993, writ denied). Generally, for an actionable nuisance to arise, a defendant must engage in one of three types of conduct: 1) intentional invasion of another's interests; 2) negligent invasion of another's interests; or 3) other conduct, culpable because abnormal and out of place in its surroundings, that invades another's interests. *Id.* Stated another way, the third type of nuisance "may be merely a right thing in the wrong place, like a pig in the parlor instead of the barnyard." *Village of Euclid, Ohio v. Ambler Realty Co.,* 272 U.S. 365, 388, 47 S.Ct. 114, 118, 71 L.Ed. 303 (1926).

### DENIAL OF WATSON'S MOTION FOR JNOV

■ Watson claims that the evidence conclusively established the existence of a nuisance and asks us to render judgment on liability and reverse for a trial on damages only. Brazos has contested liability in this case involving unliquidated damages; thus, even assuming the court erred in refusing to grant Watson's JNOV, we cannot remand for a trial on damages alone. TEX.R.APP.P. 81(b)(1); *Ortiz v. Flintkote Co,* 761 S.W.2d 531, 538 (Tex.App.—Corpus Christi 1988, writ denied). That part of point one that

asserts the court erred in denying Watson's motion for JNOV is overruled.

### REFUSAL TO SUBMIT DEFINITION AND QUESTION

Watson's petition alleged in "Count Four":

The fire caused by Brazos powerlines created a condition that substantially interfered with the use and enjoyment of the land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities attempting to use and enjoy it. This condition was created by either (1) Brazos' negligent invasion of Mr. Watson's interests; or (2) other non-negligent conduct that invaded Mr. Watson's interests.

■ Even assuming Watson's theory is correct and that the evidence established the foregoing, the instruction was properly refused. TEX.R.CIV.P. 278; *Dion v. Ford Motor Co.,* 804 S.W.2d 302, 312 (Tex.App.—Eastland 1991, writ denied). Watson pled facts to support a nuisance resulting from 1) negligent conduct or 2) "other non-negligent" conduct. However, the definition of "Nuisance" he requested read:

"Nuisance" means a condition which substantially interferes with the use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities attempting to use and enjoy it. Nuisances may exist in one of three ways:

(1) an *intentional* invasion of another's interests;

(2) a negligent invasion of another's interests; or

(3) other conduct, culpable because abnormal and out of place in its surroundings that invades another's interests. Nuisance may exist without negligence.

(Emphasis added).

■ Watson did not plead or prove that the alleged nuisance arose out of an intentional invasion. A party is not entitled

---

**1.** William Prosser has described the nuisance doctrine as a "sort of legal garbage can," pointing out that Blackstone's classic definition "certainly is broad enough to cover all conceivable torts." William L. Prosser, *Nuisance Without Fault,* 20 TEX.L.REV. 399, 410 (1942). Additionally, he notes that one of the problems in attempting to give any meaning to the term arises due to the "series of historical accidents by which nuisance came to cover the invasion of different, and unrelated, kinds of interests and to refer to various kinds of conduct on the part of the defendant." *Id.* at 411.

to the submission of a definition where no pleadings or evidence support its submission. *Id.* Therefore, the court did not err in refusing to submit Watson's requested definition. Because the definition was properly refused, the court did not err in failing to submit the nuisance question. If a question contains a legal term, *i.e.*, nuisance, and no definition of the legal term is offered, then the requested question does not provide guidance to the jury that would enable it to reach a proper verdict. *Select Ins. Co. v. Boucher,* 561 S.W.2d 474, 479 (Tex.1978); *Perez v. Weingarten Realty Investors,* 881 S.W.2d 490, 493 (Tex.App.—San Antonio 1994, writ denied). Because we do not sustain the portion of point one complaining of the court's refusal to submit Watson's requests concerning nuisance, we now overrule point one in its entirety.

## TRESPASS

By way of point two, Watson claims that the court should have granted his motion for JNOV on the issue of trespass. Alternatively, he claims that the court should have submitted his definition and question to the jury. Because we have already determined that we cannot grant the relief Watson requests regarding the court's refusal to grant a JNOV, we need not consider it further. Tex.R.App.P. 81(b)(1); *Ortiz,* 761 S.W.2d at 538.

 A trespasser is one who, without having title thereto, makes entry upon land without consent of the true owner. *McDaniel Bros. v. Wilson,* 70 S.W.2d 618, 621 (Tex. Civ.App.—Beaumont 1934, writ ref'd). Every unauthorized entry upon land is a trespass even if no damage is done. *Id.* However, to determine what damages, if any, are recoverable for a trespass, the type of conduct or nature of an activity that causes the entry must be identified. While a trespass is a trespass, different recoveries are available, depending on whether the trespass was com-

mitted intentionally, negligently, accidentally, or by an abnormally dangerous activity. Restatement (Second) of Torts §§ 158, 165, 166 (1965).

Section 158 of the Restatement provides:

One is subject to liability to another for trespass, irrespective of whether he thereby causes harm to any legally protected interest of the other, if he intentionally

(a) enters land in the possession of the other, or causes a thing or a third person to do so, or

(b) remains on the land, or

(c) fails to remove from the land a thing which he is under a duty to remove.

*Id.* § 158.

Section 165 of the Restatement reads:

One who recklessly or negligently, or as a result of an abnormally dangerous activity, enters land in the possession of another or causes a thing or third person so to enter is subject to liability to the possessor if, but only if, his presence or the presence of the thing or the third person upon the land causes harm to the land, to the possessor, or to a thing or a third person in whose security the possessor has a legally protected interest.

*Id.* § 165.[2]

### Refusal to Submit Definition and Question

 Watson did not plead or offer evidence that Brazos intentionally caused an entry onto his land, nor did he put on evidence that Brazos' activities were "abnormally dangerous." *Id.* §§ 158, 165. However, he did plead and produce evidence that a trespass predicated upon a negligent act existed, and a landowner can recover for harm actually caused to the land by a negligent entry. *Id.* § 165.

Citing a number of cases to support their submission, Watson tendered the following definition and question on trespass:[3]

---

2. Although never expressly adopted by Texas courts, two courts have quoted section 165—recognizing it as a part of the Texas common law. *Sun Pipe Line Co., Inc. v. Kirkpatrick,* 514 S.W.2d 789, 795 (Tex.Civ.App.—Beaumont 1974, writ ref'd n.r.e.); *First City National Bank of Houston v. Japhet,* 390 S.W.2d 70, 72 (Tex.Civ.

App.—Houston 1965, writ dism'd). Each ultimately found the section inapplicable. *Id.*

3. *Gregg v. Delhi–Taylor Oil Corp.,* 162 Tex. 26, 344 S.W.2d 411, 416 (1961); *Glade v. Dietert,* 156 Tex. 382, 295 S.W.2d 642, 645 (1956); *Cargal v. Cargal,* 750 S.W.2d 382, 385 (Tex.App.—

"Trespasser" means one who enters on the property of another without having consent of the owner. To constitute a trespass, entry upon another's property need not be in person but may be made by causing or permitting a thing to cross the boundary of the premises. Every unauthorized entry upon land of another is a trespass and the intent or motive prompting the trespass is immaterial.

Did [Brazos] trespass causing damage to [Watson's] property on the date of the fire that is the basis of this suit?

Because Watson raised the issue of trespass in his written pleadings and evidence, and because the definition and question requested were in substantially correct form, were timely tendered, and were marked "refused," the court erred in failing to include the definition and question in the charge. TEX.R.CIV.P. 278; *Elbaor*, 845 S.W.2d at 243. Such error was harmful as it deprived Watson of his right to have the jury decide the merits of his trespass claim. TEX.R.APP.P. 81(b)(1); *Elbaor*, 845 S.W.2d at 251. That portion of point two alleging that the court erred in refusing to submit Watson's question and definition on trespass is sustained.

## NEGLIGENCE PER SE

In point three, Watson asserts that he was entitled to a JNOV on negligence per se, or in the alternative, that the court erred in refusing to submit his instruction. We need not consider the merits of his JNOV complaint as we cannot grant the relief he requests. TEX.R.APP.P. 81(b)(1); *Ortiz*, 761 S.W.2d at 538.

■ Negligence per se is established when a plaintiff shows that a defendant, without excuse, violated a statute or ordinance, and the plaintiff belongs to the class of persons the statute or ordinance was designed to protect. *El Chico Corp. v. Poole*, 732 S.W.2d 306, 312 (Tex.1987). The statute upon which Watson relies is entitled "Construction of lines on and across roads and streets." TEX. REV.CIV.STAT.ANN. art. 1436a (Vernon Supp. 1996). Generally, section 1 of article 1436a

Fort Worth 1988, no writ); *Schronk v. Gilliam*, 380 S.W.2d 743, 746 (Tex.Civ.App.—Waco 1964,

provides that certain corporations have rights with respect to erecting, operating, and maintaining electrical poles and lines. *Id.* § 1. The section in pertinent part, provides:

Except as modified or changed by ordinance or regulation in incorporated cities and towns, all lines for the transmission and distribution of electric energy, whether along highways or elsewhere, shall be constructed, operated, and maintained, as to clearances, in accordance with the National Electrical Safety Code, as published in March, 1948 ... as revised by Handbook 81 ... provided that at any place where a transmission line crosses a highway or road it shall be at least twenty-two (22) feet above the surface of the traffic lane, and further provided that all lines shall be at least twenty-two (22) feet above the surface of any railroad track or railroad siding.

*Id.*

■ Determining the appropriate minimum height under the National Electrical Safety Code is factually intensive; different heights apply to different circumstances. NATIONAL ELECTRIC SAFETY CODE, NBS Handbook H30 (National Bureau of Standards, 5th Ed.1948), NBS Handbook H81 (National Bureau of Standards, 6th Ed.1961). Watson's brief on appeal fails to provide cites to the record showing where he presented the evidence necessary to determine the appropriate minimum height of the Brazos powerline. TEX.R.APP.P. 74(f); *Brandon v. American Sterilizer Co.*, 880 S.W.2d 488, 493 (Tex.App.—Austin 1994, no writ). In fact, we note that the requested instruction declares that sixteen and one-half feet is applicable; Watson's brief on appeal asserts that twenty-one feet is the appropriate height; and his brief in support of his motion for JNOV cites twenty-two feet as the statutory minimum. Because we cannot determine the applicable minimum height, Watson has failed to establish that the court erred in

no writ).

refusing to submit the instruction to the jury. *Id; Elbaor,* 845 S.W.2d at 243.

Point three is overruled.

## DEFINITIONS ON NEGLIGENCE AND DEGREE OF CARE

 Watson requested two definitions, "High Degree of Care," which the court refused, and "Negligence and Ordinary Care," which the court modified and gave to the jury. In points four and five, he contends the court's actions were erroneous. The court charged the jury, with respect to negligence and degree of care, as follows:

"Negligence" means failure to use ordinary care, that is, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.

"Ordinary care" means that degree of care that would be used by a person of ordinary prudence under the same or similar circumstances.

The law requires those who handle a product such as electricity to reasonably protect those who come in proximity therewith, and this duty is proportionate to and commensurate with the danger involved to those who may come into contact with that product.

Accordingly, the defendant here is required to exercise the diligence of an ordinarily prudent electrical transmission company when discharging its duty to inspect and maintain its transmission lines and supporting structures.

Although the court must submit definitions raised by the pleadings and the evidence, the precise wording of such definitions is within the sound discretion of the court. Tex. R.Civ.P. 278; *Gunn Buick, Inc. v. Rosano,* 907 S.W.2d 628, 632 (Tex.App.—San Antonio 1995, n.w.h.). The court's definitions, although not worded precisely as Watson requested, were not erroneous, and therefore, not an abuse of discretion. *Id.* Points four and five are overruled.

## GROSS NEGLIGENCE

 Finally, in point six, Watson contends that the court erred in its failure to submit a definition and question on gross negligence. "Gross negligence" means more than momentary thoughtlessness, inadvertence or error of judgment; it means such an entire want of care as to establish that the act or omission was the result of actual conscious indifference to the rights, safety, or welfare of the person affected. *Transportation Ins. Co. v. Moriel,* 879 S.W.2d 10, 20 (Tex.1994). An act or omission that is merely thoughtless, careless, or not inordinately risky cannot be grossly negligent. *Id.* at 22. Only if the defendant's act or omission is unjustifiable and likely to cause serious harm can it be grossly negligent. *Id.* The definition of gross negligence includes two elements:

(1) viewed objectively from the standpoint of the actor, the act or omission must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and (2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed in conscious indifference to the rights, safety, or welfare of others.

*Id.* at 23.

 Watson cites the conduct of Brazos employees, not for failing to detect the alleged faulty cross-arm, but in "fail[ing] to take reasonably prudent actions after assuming control of the fire site." He alleges that the employees acted with conscious indifference to the extreme risk of potential danger to Watson's property.

Bill Radde, one of the volunteer fire fighters who battled the fire, testified that while the fire fighters were on the scene, Brazos employees arrived to repair the downed line. The fire fighters were concerned for their safety and attempted to stay away from the downed line while spraying the water on the fire; however, they were also concerned about thoroughly extinguishing the fire. Radde testified that the fire fighters left the scene because they thought the fire was extinguished and because the Brazos crew told them that they (the Brazos crew) would call when the line was repaired so the fire fight-

ers could ensure that the fire did not spread. Radde testified that, to his knowledge, the Brazos crew did not call the fire fighters back. The first fire consumed only five to ten acres, but after the crew left, the fire restarted and burned approximately two-hundred and ninety acres more.

If the jury believed Radde, it could have found that Brazos had knowledge of the risk that the fire could rekindle and destroy Watson's ranch. According to Radde, the Brazos crew specifically stated that they would follow up with the fire fighters when the crew's work was complete so that the fire fighters could ensure the fire did not restart. The jury also could have found that, in leaving the scene and failing to call the fire fighters once the repairs had been completed, the Brazos crew acted with conscious indifference to Watson's rights. Therefore, the evidence raised a question as to whether Brazos failed to act, and whether that failure posed an unjustifiable risk likely to cause serious harm to Watson's land. *Id.* at 22. Because gross negligence was raised by the pleadings and the evidence, Watson's substantially correct question and definition should have been submitted to the jury. Point six is sustained.

### DISPOSITION

Due to the court's errors in refusing to submit the spoliation instruction, the trespass question and definition, and the gross negligence question and definition, we reverse the take-nothing judgment and remand the cause for a new trial.