

# NUMBER 13-03-00560-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**BIC PEN CORP.,**                                                                   **Appellant,**

**v.**

**JANACE M. CARTER, INDIVIDUALLY AND
AS NEXT FRIEND OF BRITTANY CARTER,
JONAS CARTER, AND TARASHA GIPSON,**                               **Appellees.**

---

**On appeal from the 130th District Court of Matagorda County, Texas.**

---

# MEMORANDUM OPINION ON REMAND

### Before Justices Hinojosa[1], Yañez, and Garza
### Memorandum Opinion on Remand by Justice Garza

Appellant, BIC Pen Corp. ("BIC"), challenges a jury verdict awarding actual and exemplary damages to appellee, Janace M. Carter, individually and as next friend of her children, Brittany Carter, Jonas Carter, and Tarasha Gipson. Carter sued BIC, claiming that design and manufacturing defects in a cigarette lighter caused injuries to Brittany. The jury found both design and manufacturing defects, and we affirmed based solely on an analysis of the design defect finding. *BIC Pen Corp. v. Carter*, 171 S.W.3d 657 (Tex.

---

[1] The Honorable Federico G. Hinojosa, former Justice of this Court, did not participate in this memorandum opinion because his term of office expired on December 31, 2006. *See* TEX. R. APP. P. 41.1(c).

App.–Corpus Christi 2005), *rev'd*, 251 S.W.3d 500 (Tex. 2008). Subsequently, the Texas Supreme Court held that Carter's design defect claim was preempted by federal law and remanded the cause to us to address her manufacturing defect claim. *BIC Pen Corp.*, 251 S.W.3d at 509, 511. We affirm in part and reverse and render in part.

## I. BACKGROUND

On May 27, 1998, five-year-old Jonas accidentally set fire to the dress of his six-year-old sister, Brittany, using a BIC model J-26 cigarette lighter (the "Subject Lighter"). As a result, Brittany suffered third-degree burns to over 55 percent of her body. In October 1998, Carter sued BIC, claiming that Brittany's injuries were caused by manufacturing and design defects in the lighter. A jury found in favor of Carter and awarded three million dollars in actual damages. Upon finding that BIC acted with malice, the jury awarded an additional two million dollars in exemplary damages.[2]

On original submission to this Court, BIC contended that: (1) Carter's design defect and manufacturing defect claims were preempted by federal law; (2) the evidence adduced at trial was legally and factually insufficient to support a finding of a design defect or a manufacturing defect, that any such defect caused Brittany's injuries, or that BIC had acted with malice; (3) the trial court erred in giving a spoliation instruction; (4) the trial court erred in admitting the testimony of certain expert witnesses; and (5) the trial court awarded excessive interest. We affirmed, holding that: (1) the design defect claim was not preempted by federal law; (2) the evidence was sufficient to prove that a design defect in the lighter caused Brittany's injuries and that BIC acted with malice; (3) the trial court did not commit reversible error by admitting the challenged expert testimony; and (4) the trial court did not award excessive interest. *BIC Pen Corp.*, 171 S.W.3d at 662. Because we

---

[2] The trial court reduced the exemplary damages award to $750,000 pursuant to section 41.008 of the civil practices and remedies code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 41.008(b) (Vernon 2008); *BIC Pen Corp. v. Carter*, 171 S.W.3d 657, 662 n.1 (Tex. App.–Corpus Christi 2005), *rev'd*, 251 S.W.3d 500, 503 n.1 (Tex. 2008). The final judgment, rendered on August 8, 2003, also awarded Carter pre-judgment interest on the awarded actual damages, as well as post-judgment interest on the entire damages amount.

affirmed the jury's verdict on Carter's design defect claim, we did not address any of BIC's issues as they related to the manufacturing defect claim. *Id.* at 662 & n.3.

The supreme court subsequently found that federal consumer product safety law preempted Carter's design defect claim. *BIC Pen Corp.*, 251 S.W.3d at 509, 511. The court noted specifically that the lighter safety standards set by the Consumer Product Safety Commission ("CPSC"), which the Subject Lighter satisfied, could not be interpreted as a "liability floor" that may be enhanced by state law.[3] *Id.* at 507. Rather, because the CPSC already performed a cost-benefit analysis when formulating its standard, the trial court could not impose a more strict common law standard without conflicting with the federal regulatory scheme. *Id.* at 509.

We must now address BIC's three remaining issues: (1) whether Carter's manufacturing defect claim is preempted by federal consumer product safety law; (2) whether the trial court erred in giving the spoliation instruction; and (3) whether the evidence was legally and factually sufficient to support the jury's findings that there was a manufacturing defect in the Subject Lighter, that such a defect caused Brittany's injuries, and that BIC acted with malice.

---

[3] On original submission, we described the lighter safety standards promulgated by the CPSC as follows:

> Rather than dictating how lighters are to be designed or what safety features they must include, the [CPSC] has adopted regulations detailing a protocol for testing disposable lighters. 16 C.F.R. § 1210.1. The regulations are intended to make lighters resistant to successful operation by children younger than five years of age. *Id.* The protocol requires testing of 100 randomly selected children between the ages of 42 and 51 months. *See id.* § 1210.4. The children are given two five-minute opportunities to operate "surrogate lighters," which have the same appearance and design as the actual lighter but emit a signal, such as a light or noise, rather than a flame. *See id.* Each child's first attempt is undertaken without guidance from the tester. *See id.* If a child's first five-minute attempt is unsuccessful, the tester demonstrates how to use the lighter and the child is given an additional five minutes to operate the lighter. *See id.* § 1210.4(f)(4). A lighter passes the protocol if at least 90 percent of the 100 children cannot operate the lighter after [two five-minute] attempts. *See id.* 1210.4(h)(1). If more than ten percent of the children operate the lighter, a different group of 100 children is empaneled to test the lighter. *See id.* The lighter passes the protocol if at least 85 percent of the 200 children cannot operate it. *See id.* § 1210.3(a).

*BIC Pen Corp.*, 171 S.W.3d at 663 n.4.

3

## II. Discussion

**A.    Preemption**

When a state law conflicts with federal law, it is preempted and has no effect.  U.S. CONST. art. VI, cl. 2; *Maryland v. Louisiana*, 451 U.S. 725, 747 (1981); *Mills v. Warner Lambert Co.*, 157 S.W.3d 424, 426 (Tex. 2005).  State laws may conflict with federal laws expressly, *see Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992); *Great Dane Trailers, Inc. v. Estate of Wells*, 52 S.W.3d 737, 743 (Tex. 2001), or impliedly, *see Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995); *Great Dane Trailers, Inc.*, 52 S.W.3d at 743.  Federal statutes and regulations impliedly conflict with state law when such statutes and regulations "indicate[] that Congress intended federal law to occupy the field exclusively or if state law actually conflicts with federal law or regulations."  *Great Dane Trailers, Inc.*, 52 S.W.3d at 743 (citing *Freightliner Corp.*, 514 U.S. at 287).  "State law presents an actual conflict with federal law when:  (1) it is impossible for a private party to comply with both state and federal requirements; or (2) state law obstructs accomplishing and executing" the "full purposes and objectives" of Congress.  *Id.*  Here, BIC argues that Carter's claims are impliedly preempted because validation of her claims would impose standards that would obstruct the accomplishment and execution of the full purposes and objectives of the federal Consumer Product Safety Act ("CPSA").  Preemption is a legal issue which we review de novo.  *BIC Pen Corp.*, 171 S.W.3d at 663; *see City of Euless v. Dallas/Fort Worth Int'l Airport Bd.*, 936 S.W.2d 699, 702 (Tex. App.–Dallas 1996, writ denied) (citing *In re Humphreys*, 880 S.W.2d 402, 404 (Tex. 1994)).

On original submission, BIC contended that a finding in favor of Carter would frustrate the purposes underlying the CPSA[4] because it would impose a rule requiring:  (1)

---

[4] The CPSA states that its purposes are as follows:

(1)  to protect the public against unreasonable risks of injury associated with consumer products;

(2)  to assist consumers in evaluating the comparative safety of consumer products;

a higher minimum percentage of children who cannot operate the lighter, and (2) a more advanced age for children to be tested with surrogate lighters.[5] Carter countered by arguing that her common law claim is expressly preserved according to the saving clause contained in the CPSA, which states that "[c]ompliance with consumer product safety rules or other rules or orders under this chapter shall not relieve any person from liability at common law or under State statutory law to any other person." *Id.* § 2074(a). However, although the saving clause allows state-law tort claims, it "does not permit claims that actually conflict with federal regulations." *BIC Pen Corp.*, 251 S.W.3d at 506; *see Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 872 (2000).

The Texas Supreme Court agreed with BIC that a finding in favor of Carter on her design defect claim would conflict with the federal purposes underlying the CPSA by imposing a more restrictive standard than that called for by the federal regulatory scheme. *BIC Pen Corp.*, 251 S.W.3d at 509. The court reasoned that, because the CPSC had engaged in a cost-benefit analysis in formulating the safety standard for lighters, the standard was not simply a "liability floor" which common law liability could supplement. *Id.* at 507 ("The [CPSC] specifically noted that a higher ([ninety] percent) acceptance criterion was also considered, but rejected because the higher performance level [was] not commercially or technically feasible for many firms and would have substantial adverse effects on manufacturing and competition, and would increase costs disproportionate to benefits.") (internal quotations and citations omitted).

---

(3) to develop uniform safety standards for consumer products and to minimize conflicting State and local regulations; and

(4) to promote research and investigation into the causes and prevention of product-related deaths, illnesses, and injuries.

15 U.S.C. § 2051(b).

[5] BIC noted that the standards promulgated by the CPSC for lighter safety required only that 85 percent of the children tested be unable to activate the lighter. *See* 16 C.F.R. § 1210.3(a). BIC also noted that the standards mandated testing only on children under five years of age, *see id.* § 1210.1, whereas Jonas Carter was five years and two months old at the time of the accident.

The court, however, noted that Carter's manufacturing defect claim raises a question separate from whether the design itself was faulty, and remanded to us to determine whether the manufacturing defect claim is similarly preempted. *Id.* at 509. We hold that it is not. The CPSC promulgates standards regulating the *design* of consumer products, not their manufacture. Moreover, there is no mechanism in the CPSA or in the corresponding federal regulations addressing products designed in accordance with the federal standards yet manufactured in a way that deviates from those standards. *See Cooper Tire & Rubber Co. v. Mendez*, 204 S.W.3d 797, 800 (Tex. 2006) ("A manufacturing defect exists when a product deviates, in its construction or quality, from the specifications or planned output in a manner that renders it unreasonably dangerous."). Therefore, a common law rule requiring a manufacturer to construct its products in conformance with design specifications—which would result from a finding that BIC was liable on Carter's manufacturing defect claim—would not conflict in any way with the federal regulatory scheme establishing standards for those specifications. On the contrary, such a common law rule is necessary to ensure that manufacturers comply with the federal regulatory scheme. To hold otherwise would be to nonsensically state that manufacturers have an obligation to design products pursuant to regulatory standards but are free to deviate from those standards when actually manufacturing the product. Such a holding would nullify the stated federal objective of "protect[ing] the public against unreasonable risks of injury associated with consumer products." 15 U.S.C. § 2051(b).

Accordingly, we conclude that Carter's manufacturing defect claim is not preempted by federal law. BIC's first remaining issue is overruled.

## B. Spoliation Instruction

BIC argues that it is entitled to a new trial because the trial court erred in giving a spoliation instruction to the jury. Question number one of the jury charge, asking whether there was a manufacturing defect in the Subject Lighter, contained the following instruction:

6

You are instructed that Bic Pen Corporation destroyed documents containing the testing results of Bic Pen Corporation lighters tested and manufactured the same week as the Subject Lighter after those documents had been requested from Bic Pen Corporation and after Bic Pen Corporation had a duty to preserve those documents and not destroy them. You are instructed that you may presume that the documents destroyed were unfavorable to Bic Pen Corporation.

The use of a spoliation instruction is generally limited to two circumstances: (1) the deliberate destruction of relevant evidence; and (2) the failure of a party to produce relevant evidence or to explain its non-production. *Wal-Mart Stores, Inc. v. Johnson*, 106 S.W.3d 718, 721 (Tex. 2003) (citing *Anderson v. Taylor Publ'g Co.*, 13 S.W.3d 56, 61 (Tex. App.–Dallas 2000, pet. denied)). Under the first circumstance, a party who has deliberately destroyed evidence is presumed to have done so because the evidence was unfavorable to its case. *Id.* (citing *Williford Energy Co. v. Submergible Cable Servs., Inc.*, 895 S.W.2d 379, 389-90 (Tex. App.–Amarillo 1994, no writ); *Brewer v. Dowling*, 862 S.W.2d 156, 159 (Tex. App.–Fort Worth 1993, writ denied)). Under the second circumstance, the presumption arises because the party controlling the missing evidence cannot explain its failure to produce it. *Id.* at 721-22 (citing *Watson v. Brazos Elec. Power Co-Op., Inc.*, 918 S.W.2d 639, 643 (Tex. App.–Waco 1996, writ denied)). The trial court has considerable discretion to determine necessary and proper jury instructions. *Tex. Workers' Comp. Ins. Fund v. Mandlbauer*, 34 S.W.3d 909, 911 (Tex. 2000).

It is undisputed that Carter propounded a discovery request upon BIC in December of 1999 asking in part for manufacturing quality reports, and that BIC later destroyed some of the documents that were requested.[6] However, BIC contends that it was justified in

---

[6] Although the record does not contain the December 1999 discovery request, neither party disputes the fact that such a request was propounded. Moreover, the record does contain a "Motion to Compel Production of Documents" filed by Carter on September 24, 2002. This motion included as an exhibit a "Fifth Amended Notice of Intention to Take the Oral and Videotape Deposition of Corporate Representative of BIC Pen Corporation Subpoena Duces Tecum," which was filed on an earlier date and requested the production of the following documents, among others:

(18) All documents which evidence or reflect the process engineering [sic] utilized in manufacturing the lighter model at issue in this case, including all methods of quality control, whether statistical engineering was utilized for the manufacture of the lighter

7

destroying the documents because it had kept the documents for the time period mandated under the applicable federal regulations and "had no reason to contemplate" that Carter was asserting a manufacturing defect claim until the eve of trial.

BIC is correct that it was only required by federal regulations to keep records of production testing for three years. *See* 16 C.F.R. § 1210.17.[7] Nevertheless, a duty to preserve evidence arises when a party knows or reasonably should know that there is a substantial chance that a claim will be filed and that evidence in its possession or control

---

or any components used in the lighter.

(19)    All documents which evidence or reflect the engineering process used by Bic to determine that the child resistant feature(s) on each and every child resistant lighter manufactured or sold by Bic functioned as designed (limited to the 10 year period preceding the date suit was filed).

(20)    All documents which evidence or reflect reports of manufacturing line trouble, malfunction, stoppage or shutdown for the manufacturing line or machines used in the manufacture of the lighter at issue in this case; ten (10) year period preceding the date suit was filed.

(21)    All documents which evidence or reflect quality control, product safety feature testing or product functionality testing reports for the model lighter at issue in this suit;

(22)    All documents which evidence or reflect whether Bic has ever had trouble with, experienced malfunctions on or had to shutdown any of its manufacturing processes or lines that manufacture child-resistant lighters, including the nature of the problem and the dates(s) [sic] the problems occurred.

[7] The relevant federal regulation provides:

(a)    Records. Every manufacturer and importer of lighters subject to the [safety standard for cigarette lighters] shall maintain the following records . . .

        . . . .

        (3)    Records of production testing, including the test results, the date and location of testing, and records of corrective actions taken, which in turn includes the specific actions taken to improve the design or manufacture or to correct any noncomplying lighter, the date the actions were taken, the test result or failure that triggered the actions, and the additional actions taken to ensure that the corrective action had the intended effect. *These records shall be kept for 3 years following the date of testing.* . . .

16 C.F.R. § 1210.17 (emphasis added); *see* 15 U.S.C. § 2065(b) ("Every person who is a manufacturer, private labeler, or distributor of a consumer product shall establish and maintain such records, make such reports, and provide such information as the Commission may, by rule, reasonably require for the purposes of implementing this Act . . . ."). Neither party disputes that this regulation was applicable to the manufacturing quality reports requested by Carter in discovery.

It was uncontroverted that the Subject Lighter was manufactured during the 42nd week of 1997. The regulations therefore required BIC to keep records of testing done during that week until the 42nd week of 2000.

8

will be material and relevant to that claim. *Wal-Mart Stores, Inc.*, 106 S.W.3d at 722 (citing 1 WEINSTEIN & BERGER, WEINSTEIN'S FEDERAL EVIDENCE § 301.06[4] at 301-28.3 (2d ed. 2003)). Thus, even if BIC was not required to retain records by federal regulation, it was required to retain all material records once it knew or should have known that a relevant claim would be filed. *See id.* BIC asserts that it did not know, and should not have reasonably known, that Carter would assert a manufacturing defect claim, noting that Carter first raised a manufacturing defect claim in her third amended petition filed on October 31, 2002. However, BIC does not dispute that it destroyed the documents after the original discovery request, asking in part for manufacturing quality reports, was propounded. Accordingly, it should have reasonably known there was a "substantial chance" that a claim would be filed relevant to those reports.[8] *See id.*

BIC next argues that the inclusion of a spoliation instruction was error because the manufacturing quality reports dealt only with a "small sample of lighters made the same week as the Subject Lighter," which, BIC asserts, was not relevant to any issue in the case. To support this assertion, BIC notes that the parties had the opportunity to test and examine the Subject Lighter itself before trial, and that the only issue was whether the Subject Lighter itself (and not other lighters made the same week) was manufactured defectively. However, while the ultimate issue was whether the Subject Lighter was in fact defective, a manufacturing quality report showing that other defective lighters were made the same week as the Subject Lighter would have constituted circumstantial evidence that the Subject Lighter was itself defective. *See Shaun T. Mian Corp. v. Hewlett-Packard Co.*, 237 S.W.3d 851, 863-64 (Tex. App.–Dallas 2007, pet. denied) ("[C]ircumstantial evidence can give rise to both the inference of a product defect and the inference that the defect

---

[8] BIC did object to the discovery request on the basis that the requested documents were irrelevant to the design defect claim, which was the only active claim asserted by Carter at the time; BIC claims that it was therefore justified in destroying the manufacturing quality reports. However, the record does not contain any ruling by the trial court pertaining to BIC's objection. Accordingly, BIC was not entitled to destroy the documents that were requested by Carter.

existed at the time of sale."). Moreover, Carter claims that the destroyed documents may have identified more precise specifications for the manufacture of the Subject Lighter. Thus, even if the destroyed documents did not specifically state whether or not the Subject Lighter was defective, its contents may have been probative as to this ultimate issue. Accordingly, the court was within its discretion to determine that the documents were "material and relevant" to the case and that their destruction warranted the inclusion of a spoliation instruction. *See Wal-Mart Stores, Inc.*, 106 S.W.3d at 721; *Ordonez v. M.W. McCurdy & Co.*, 984 S.W.2d 264, 273 (Tex. App.–Houston [1st Dist.] 1998, no pet.).

Finally, BIC contends that, even if the spoliation instruction was proper, the trial court erred by failing to instruct the jury that BIC could have rebutted the presumption that the destroyed documents would have been unfavorable to BIC. *See Ordonez*, 984 S.W.2d at 273 ("[T]he alleged spoliator may rebut the presumption by showing that the evidence in question was not destroyed with fraudulent intent or purpose."). However, BIC does not direct us to any point in the record where it actually attempted to rebut this presumption. We therefore cannot say that the failure of the trial court to include the proposed instruction on rebuttability is grounds for reversal. *See id.* (citing TEX. R. APP. P. 44.1) ("Any error in failing to instruct [the jury] is reversible only if it probably caused the rendition of an improper judgment.").

We conclude that the trial court's inclusion of the spoliation instruction in the jury charge was not error. BIC's second remaining issue is overruled.

## C. Evidentiary Sufficiency

BIC also contends that the trial court's judgment should be reversed because there was legally and factually insufficient evidence to establish: (1) that there was a manufacturing defect in the Subject Lighter; (2) that such a defect was a producing cause of Brittany's injuries; and (3) that BIC acted with malice.

*1. Standard of Review*

In reviewing the legal sufficiency of evidence, we credit evidence supporting the judgment if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Villagomez v. Rockwood Specialties, Inc.*, 210 S.W.3d 720, 748 (Tex. App.–Corpus Christi 2006, pet. denied). We will sustain a legal sufficiency challenge only if: (1) there is a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *City of Keller*, 168 S.W.3d at 810. More than a scintilla of evidence exists, and the evidence is legally sufficient, if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about a vital fact's existence. *Lee Lewis Constr. Co. v. Harrison*, 70 S.W.3d 778, 782-83 (Tex. 2001). However, "when the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence." *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004) (citing *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)).

In conducting a factual sufficiency review, we do not substitute our judgment for that of the jury; rather, we view all the evidence in a neutral light to determine whether the contested finding is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust, shock the conscience, or clearly demonstrate bias. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003); *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986); *Villagomez*, 210 S.W.3d at 749.

*2. Manufacturing Defect*

To establish a manufacturing defect cause of action, a plaintiff must prove the following elements: (1) the product deviated from its specifications or planned output in

11

a manner that rendered the product unreasonably dangerous; (2) the defect existed at the time the product left the possession of the defendant;[9] and (3) the defect was a producing cause of the injury. *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 41-42 (Tex. 2007). Texas law does not generally recognize a product failure or malfunction, standing alone, as sufficient proof of a product defect. *Id.* at 42. Instead, "a specific defect must be identified by competent evidence and other possible causes must be ruled out." *Id.*

At trial, Carter produced evidence in the form of letters sent by BIC to the CPSC in 1995 and 1997 detailing the precise specifications for the model J-26 lighter. The specifications were expressed as, among other things, a list of measurements representing the forces that must be exerted upon the lighter in order to activate it. The three forces listed on the CPSC letters were: (1) "Shield force," the amount of force necessary to move the shield (or guard) which must be depressed in order to operate the lighter; (2) "Fork force," the amount of force necessary to move the fork mechanism that releases butane gas to create a flame; and (3) "Sparkwheel rotation force," the amount of force necessary to rotate the steel wire sparkwheel to create a spark as it makes contact with the flint.

Prior to trial, BIC conducted two tests of the Subject Lighter in order to determine whether it met specifications. The results of the tests, and the figures to which the results were compared, are as follows:

|  | 1995 CPSC specifications | 1997 CPSC specifications | Subject Lighter test 1 result | Subject Lighter test 2 result |
|---|---|---|---|---|
| Shield force | 1.0–2.0 kg | 1.0–2.0 kg | 1.892 kg | 1.889 kg |
| Fork force | 0.4–0.6 kg | 0.3–0.6 kg | 0.353 kg | 0.349 kg |
| Sparkwheel rotation force | 1.0–1.7 kg | 0.7–1.7 kg | 0.975 kg | 0.962 kg |

The testing revealed that the Subject Lighter met both the 1995 and 1997

---

[9] BIC did not argue that there was a defect in the Subject Lighter that arose after it left BIC's possession.

12

specifications for shield force, as well as the 1997 specifications for fork force and sparkwheel rotation force. However, the Subject Lighter did not meet the 1995 specifications for fork force or sparkwheel rotation force.

BIC argues that only the specifications listed in the 1997 letter are applicable, and that those listed in the 1995 letter are inapplicable. Specifically, it claims that the pre-trial test administered on the Subject Lighter was the one used for the 1997 specification and could not be used to test the 1995 specification.[10] According to BIC, the 1997 testing protocol differed from the 1995 testing protocol in that it required the fork mechanism to travel a lesser distance in order for the lighter to register as activated. BIC's expert, Paul Labrum, who administered the tests, testified that because the tests were performed using the 1997 testing protocol, only the 1997 specifications applied. Conversely, Carter asserts that the specifications contained in the 1995 letter to the CPSC, rather than those contained in the 1997 letter, applied to the Subject Lighter. Carter notes that, although the Subject Lighter was the initial version of the J-26 lighter, BIC introduced a re-engineered J-26 design in 1997, and the 1997 CPSC letter contained the specifications for the new design. Carter presented expert testimony by William Kitzes, a safety analyst and product safety manager, who stated that only the 1995 specifications applied to the Subject Lighter. Kitzes reasoned that the 1995 specifications applied because only the 1995 version of the J-26 lighter, like the Subject Lighter, had a round-wire sparkwheel and a one-piece hood, whereas the re-engineered 1997 version had a square-wire sparkwheel and a two-piece hood. Given the test results and Kitzes' testimony, we find that there was sufficient evidence adduced for the jury to have concluded that the 1995 specifications applied and that the Subject Lighter deviated from those specifications.

---

[10] BIC also asserts that the 1995 specification for fork force was inapplicable because it "was expressed as an approximate specification only." The 1995 letter sent to the CPSC by BIC stated the fork force specification as follows: "approx. 0.9 – 1.3 pounds (400 - 600 grams)." The jury could have reasonably concluded that the term "approx." referred to the fact that "0.9 - 1.3 pounds" was "approximately" equivalent to "400 - 600 grams," with the metric measure being the more precise specification.

Carter also notes that the spoliation instruction, which we have determined was properly given, provided an additional basis for the jury to conclude that a manufacturing defect existed. Although the presumption generated by a spoliation instruction does not relieve the non-spoliating party of the burden to prove each element of its case, the presumption does have probative value and it may be sufficient to support the non-spoliating party's assertions. *Trevino v. Ortega*, 969 S.W.2d 950, 960-61 (Tex. 1999). It is a factor that may be used by the factfinder in weighing the evidence. *Id.* Carter claims that "the destroyed documents would have identified [BIC]'s internal manufacturing specifications for the [S]ubject [L]ighter" and that the jury was entitled, pursuant to the spoliation instruction, to assume that the internal manufacturing specifications were "at the high end of the CPSC specifications." With that presumption, Carter argues, all of the Subject Lighter test results could be considered out of specification. We agree. Labrum, BIC's expert, testified as follows:

| | |
|---|---|
| Q. [Carter's attorney] | . . . Now, from a standpoint of your manufacturing specs, do the manufacturing specifications—are they designed to exceed what the Consumer Product Safety Commission requires for child-resistancy features? |
| A. [Labrum] | No. In fact, just the opposite. They don't exceed those. They are lower or tighter. |
| Q. | In other words— |
| A. | Yeah. Your word "exceed" can be taken a couple of ways. |

We find, given this testimony, that the jury could have presumed pursuant to the spoliation instruction that the destroyed documents reflected manufacturing specifications that were more strict than those expressed to the CPSC in the 1995 and 1997 letters.

Even if the evidence, including the presumption arising from the spoliation instruction, was sufficient to establish that the Subject Lighter failed to meet BIC's internal specifications, Carter was still obligated to provide sufficient evidence that the Subject

14

Lighter was "unreasonably dangerous." *See Am. Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 434 (Tex. 1997). We find that she did. "Unreasonably dangerous" is defined as "dangerous to an extent beyond that which would be contemplated by the ordinary consumer with knowledge common to the community." *Id.* at 426 (quoting RESTATEMENT (SECOND) OF TORTS § 402A cmt. i (1965)). Carter produced evidence at trial showing that the Subject Lighter failed to meet the fork force and sparkwheel rotation force specifications provided by BIC in 1995 to the CPSC, and that the Subject Lighter was therefore easier to operate than it would have been had it complied with the specifications. This provided a basis for reasonable minds to differ as to whether the Subject Lighter was unreasonably dangerous; accordingly, the evidence was legally sufficient to allow the jury to arrive at such a conclusion. *See Lee Lewis Constr. Co. v. Harrison*, 70 S.W.3d at 782-83.

Carter was also required to show legally and factually sufficient evidence that the Subject Lighter's manufacturing defect was a producing cause of Brittany's injuries. *See Ford Motor Co.*, 242 S.W.3d at 41-42. A producing cause is one that is: (1) a substantial cause of the event in issue; and (2) a but-for cause, or one without which the event would not have occurred. *Id.* at 46. The jury may determine causation based on circumstantial evidence. *See Ridgway*, 135 S.W.3d at 601. The evidence at trial showed that Jonas was playing with the Subject Lighter when he accidentally set fire to Brittany's dress and that the Subject Lighter failed to meet BIC's specifications for child resistancy as reflected in its 1995 letter to the CPSC. A reasonable finder of fact could infer from the circumstances of the case that the Subject Lighter's defect was a substantial cause of Brittany's injuries and that such injuries would not have occurred if the Subject Lighter complied with BIC's specifications. Moreover, as we noted on original submission, a child burn victim is not precluded from recovering against the manufacturer of a defective lighter simply because he or she was burned as a result of another child's use of the lighter. *BIC Pen Corp.*, 171

15

S.W.3d at 673 (citing *Hernandez v. Tokai Corp.*, 2 S.W.3d 251, 257 (Tex. 1999)).

We conclude that Carter produced more than a scintilla of evidence to support a finding that the Subject Lighter deviated from its specifications or planned output, that such deviation rendered the lighter unreasonably dangerous, and that the defect was a producing cause of Brittany's injuries. *Ford Motor Co.*, 242 S.W.3d at 41-42; *Lee Lewis Constr. Co.*, 70 S.W.3d at 782-83. Further, viewing all the evidence in a neutral light, we cannot say that such a finding is manifestly unjust, shocks the conscience, or clearly demonstrates bias. *See Golden Eagle Archery, Inc.*, 116 S.W.3d at 761.

### 3. Malice and Exemplary Damages

Generally, exemplary damages may only be awarded if the plaintiff proves by clear and convincing evidence that the harm with respect to which the plaintiff seeks recovery of such damages results from fraud, malice, or gross negligence. TEX. CIV. PRAC. & REM. CODE ANN. § 41.003(a) (Vernon 2008). This standard may not be satisfied by evidence of ordinary negligence, bad faith, or a deceptive trade practice. *Id.* § 41.003(b) (Vernon 2008). Here, the jury found, by clear and convincing evidence, that the harm to Brittany Carter resulted from the malice of BIC. Because malice must be proved by clear and convincing evidence, an elevated standard of proof, we apply a more exacting sufficiency review on appeal by looking at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding of malice was true. *BIC Pen Corp.*, 171 S.W.3d at 674 n.20 (citing *Sw. Bell Co. v. Garza*, 164 S.W.3d 607, 622 (Tex. 2004); *In the Interest of J.F.C.*, 96 S.W.3d 256, 264-68 (Tex. 2002)).

At the time this case was filed, malice was defined under the Texas Civil Practice and Remedies Code as:

(A)    a specific intent by the defendant to cause substantial injury to the claimant; or

(B)    an act or omission:

16

(i)    which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and

(ii)    of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

Act of Apr. 20, 1995, 74th Leg., R. S. ch. 19, § 1, 1995 Tex. Gen. Laws 108, 109, *amended by* Act of June 2, 2003, 78th Leg., R.S. ch. 204, § 23.02(d), 2003 Tex. Gen. Laws 847, 899. At the time, this statute also provided that the claimant could recover exemplary damages even if only nominal damages were awarded, but only if it established by clear and convincing evidence that the harm resulted from malice as defined in subpart A above; that is, by clear and convincing evidence of the defendant's specific intent to cause substantial injury to the claimant. *BIC Pen Corp.*, 251 S.W.3d at 510 (citing TEX. CIV. PRAC. & REM. CODE ANN. § 41.004(b)).

Carter contends that BIC's conduct involved an extreme degree of known risk, and that BIC acted with conscious indifference to the safety and welfare of children such as Brittany. Although most of Carter's allegations of malice involve the design of the lighter, she does also contend that "[BIC] knew that lighters were leaving its factory that did not conform to its specifications." Nevertheless, Carter provided no evidence showing specific intent on the part of BIC to cause substantial injury to its customers. Moreover, Carter did not establish that BIC acted with an actual, subjective awareness of an extreme degree of risk in its manufacturing process. Accordingly, we cannot say that a reasonable trier of fact could have formed a firm belief or conviction that BIC acted with malice in its manufacturing of the Subject Lighter. *See BIC Pen Corp.*, 171 S.W.3d at 674 n.20.

Because Carter did not produce a scintilla of probative evidence showing that BIC acted with malice in manufacturing the Subject Lighter, there was no basis upon which the jury could have properly awarded exemplary damages to Carter. *See* TEX. CIV. PRAC. &

17

REM. CODE ANN. § 41.003(a).  BIC's third remaining issue is therefore sustained.

### III.  CONCLUSION

We affirm that portion of the trial court's judgment awarding actual damages, and we reverse and render that portion of the trial court's judgment awarding exemplary damages.

DORI CONTRERAS GARZA,
Justice

Memorandum Opinion on remand delivered
and filed this the 4th day of December, 2008.

18