John WARD, Mark Ward, Allan Ward, and Kirk Ingram, et al., Appellants,

v.

NORTHEAST TEXAS FARMERS CO-OP ELEVATOR and Wilbur–Ellis Company, Appellees.

No. 06–95–00025–CV.

Court of Appeals of Texas, Texarkana.

Submitted Aug. 29, 1995.

Decided Sept. 11, 1995.

Rehearing Overruled Oct. 24, 1995.

Mark H. How, Short, How, Lozano, Frels & Tredoux, LLP, Dallas, Paul Miller, Keeney, Anderson, Miller, James & Miller, Texarkana, for Appellants.

Ralph K. Burgess, Patton, Haltom, Roberts, McWilliams & Greer LP, Texarkana, for Appellee Northeast Texas Farmers Co-op.

Joseph W. Spence, Gardere & Wynne, Dallas, for Appellee Wilbur–Ellis Co.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

GRANT, Justice.

John Ward, Mark Ward, Allan Ward, Kirk Ingram, James E. Gill, Johnny W. Gill, Elizabeth Ramsey, George Hancock, Frances Rozell, Neal Rozell, Independent Executor of the Estate of Rebecca Harvey, Deceased, Joe A. Ford, Individually and as Independent Executor of the Estate of G.W. Bartlett, Deceased, the Ford–Kelley Estates and the Ford–Bartlett Estates, Mack Glover, Fran-

ces Griffin, Eleanor McCluer, Gary Mac Underwood, Paul W. Haywood, Jr., E.W. Quinton, Rufus Ward, Jr., Underwood Partners, Godfrey Von Lueninick, Harold Pierce, Jess Holmes, Mack Glover, Independent Executor of the Estate of F.M. Scaff, Alexander Frick, Alice Horton, Waylon Boyd, and Joe Ward appeal from a summary judgment. The appellants contend that the trial court erred by rendering summary judgment in the appellees' favor because the appellees failed to disprove any element of appellants' allegation that they were either negligent or negligent per se in selling controlled herbicides to

    (a) an unlicensed or improper applicator

    (b) without requiring presentment of a valid application permit prior to sale

    (c) under both state and federal law.

Appellants also contend that appellees failed to negate any essential element of their cause of action for nuisance or trespass. Appellants also contend that they conclusively proved their claim of negligence per se and negligence and that the trial court should have granted their motion for summary judgment.

Appellants consist of twenty-nine individuals or groups who own property in Red River County. According to the allegations in the suit filed by these parties collectively, cotton crops on 3,400 acres were damaged or destroyed by herbicides sold by the appellees. The undisputed facts show that the herbicides were controlled-use herbicides purchased from the appellees by property owners neighboring the affected land. The property owners hired Thompson Flying Service, Inc. to apply the herbicides to their property. Appellants contend that the herbicides drifted onto their property and damaged their crops. Appellants claim damages of $2,000,000. The appellees obtained a summary judgment and then their cases were severed from the ongoing action against Thompson Flying Service.

**Specific Claims Against These Appellees**

Appellants alleged that Northeast Texas Farmers Co–Op Elevator was negligent in selling herbicides described as "Grazon P + D" and/or "Albaugh A–4D" to the Smith Trust Ranch. The evidence shows that purchases were made on May 20, June 23, and June 24, 1991. The order was placed by Jessie Thompson, owner of Thompson Flying Service, but the invoices billed the Smith Ranch and deliveries were made to the ranch. Thompson aerially applied that herbicide to the Smith Trust Ranch on June 26, 1991.

Appellants also alleged that the Wilbur–Ellis Company was negligent in selling an herbicide named "Weedar 64" to J.D. Littrell. The evidence shows that Wilbur–Ellis sold sixty gallons of Weedar 64 to Littrell on July 2, 1990. Littrell later provided the herbicide to the Thompson Flying Service, who applied the herbicide to the Littrell Ranch on June 26, 1991.

**Analysis**

In this case, appellants are attempting to extend a negligence cause of action to the seller of a product that was allegedly negligently applied, not by the purchaser, but by an independent contractor hired by the purchaser to apply the product. To support this contention, appellants rely on allegations of common-law negligence and negligence per se.

**Summary Judgment Standard of Review**

    Summary judgment is proper provided the movant establishes that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Tex.R.Civ.P. 166a(c); *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671 (Tex.1979); *Wilcox v. St. Mary's University of San Antonio*, 531 S.W.2d 589 (Tex.1975); *Baubles & Beads v. Louis Vuitton S.A.*, 766 S.W.2d 377 (Tex.App.–Texarkana 1989, no writ). The question on appeal is not whether the summary judgment proof raises a fact issue with reference to the essential elements of the plaintiffs' cause of action, but whether the summary judgment proof establishes that the movant is entitled to summary judgment as a matter of law. *Gonzalez v. Mission American Insurance Co.*, 795 S.W.2d 734, 736 (Tex.1990); *Gibbs v. General Motors Corp.*, 450 S.W.2d 827 (Tex.1970).

    Because the movant bears the burden of proof, all conflicts in the evidence are disregarded, evidence favorable to the non-

movant is taken as true, and all doubts as to the genuine issue of material facts are resolved in favor of the nonmovant. *Nixon v. Mr. Property Management,* 690 S.W.2d 546 (Tex.1985); *Wilcox,* 531 S.W.2d 589. A defendant who moves for summary judgment must demonstrate that at least one essential element of the plaintiff's cause of action has been disproved as a matter of law. *Hammonds v. Thomas,* 770 S.W.2d 1 (Tex.App.–Texarkana 1989, no writ). Once the defendant has negated an essential element of the plaintiff's cause of action, the burden then shifts to the plaintiff to produce evidence of probative force raising an issue of fact as to the element negated. *Goldberg v. United States Shoe Corp.,* 775 S.W.2d 751, 752 (Tex.App.–Houston [1st Dist.] 1989, writ denied).

### Negligence Per Se Under State Statutes

Appellants contend the trial court erred in granting summary judgment in favor of the Northeast Texas Farmers Co-op because the Co-op was negligent or in violation of rules or regulations by selling herbicides to Eugene Smith of the Smith Trust Ranch and to Jesse Thompson and Thompson Flying Service, Inc. Appellants first contend that the Co-op has failed to negate their allegations of negligence per se.

■ Negligence per se can be shown to exist if a party violates a statutorily specified standard of conduct. Negligence per se is a tort concept by which civil courts adopt a legislatively imposed standard of conduct as defining the conduct of a reasonably prudent person. The unexcused violation of a statute constitutes negligence as a matter of law if such statute was designed to prevent injury to the class of persons to which the injured party belongs. *Moughon v. Wolf,* 576 S.W.2d 603, 604 (Tex.1978).

■ We also recognize that rules and regulations promulgated by administrative agencies do not necessarily set out a standard for civil liability under the negligence per se rule. *Continental Oil Co. v. Simpson,* 604 S.W.2d 530, 534 (Tex.Civ.App.–Amarillo 1980,

writ ref'd n.r.e.). Texas follows the rule that courts will not adopt an administrative rule or regulation as a standard for negligence unless "a purpose of the rule is to afford protection to the class of persons to which the injured party belongs against the hazard involved in the particular case." *Continental Oil,* 604 S.W.2d at 534.

■ That does not end the inquiry, however. The further question is whether the violative conduct was a *proximate cause* of the accident. *Moughon,* 576 S.W.2d at 604.

■ Appellants contend that the statutory requirements set forth by the Texas Administrative Code and by the rules and regulations imposed by the Administrative Code require the seller of herbicides of this type to sell the product only to individuals holding a valid applicator's license and a valid applicator's permit specifying the area where the herbicide is to be used. This conclusion is supported by neither the statute nor the Administrative Code as they existed in 1991.[1]

The enabling legislation is Section 75.005 of the Agriculture Code,[2] which provides generally that the department shall adopt rules prescribing the information to be stated in the records that are required to be kept by dealers selling herbicides. The Administrative Code provides specific information that a dealer is to keep in connection with his sale of herbicides.

(a) Sale by retailers, distributors, wholesalers, and manufacturers of herbicides are sales within the terms of the Herbicide Law and require a license before such sales are made.

(b) Any dealer selling hormone herbicides ... must have a Dealer's License and report all sales, regardless of whether or not they are to be used in a regulated or unregulated county.

. . . .

(d) All dealers are required to make and retain for a period of two years, a record of sales of hormone-type herbicides. Such

---

1. All references to the Agriculture Code and the Administrative Code are to the versions in effect in 1991, unless otherwise noted.

2. Acts 1989, 71st Leg., ch. 230, § 131(2), eff. Sept. 1, 1989.

records of each sale shall consist of the following information:

(1) Name of purchaser.

(2) Mailing address of the purchaser.

(3) The date of the sale or delivery.

(4) The amount and kind of herbicide sold.

(5) The area to which the herbicide is to be applied.

4 TEX.ADMIN.CODE § 11.7 (1990).

Appellants contend that the Co-op was negligent per se because it did not record the applicator's license onto the form provided by the Texas Department of Agriculture pursuant to the above-quoted section. (At the time, it appears that Smith had a valid license, but Thompson's had lapsed.) A copy of one of the forms is part of the summary judgment evidence.

The rules promulgated by the Department of Agriculture pursuant to Section 75 of the Agriculture Code did not, at that time, restrict the sales of these herbicides only to individuals with applicator's license. Rather, the Agriculture Code restricted the application of those herbicides so that they might only be used by people bearing such valid licenses. Appellants ask this Court to construe the rule to imply that because the form contains a blank for the applicator's license number, even without a specific requirement in the Code that the herbicide only be sold to holders of such permits, failure to record that information in the appropriate spot violates the statute. These forms were not a part of the statute, but were prepared by the Texas Department of Agriculture. We will not extend the requirements of the statute beyond its clear language.

Further, appellants depend upon Section 75.005(d) of the Agriculture Code as providing the remedy for failure to submit a copy of a record required under subsection (c). That section presently reads that the Agriculture Department may revoke a dealer's license if the dealer fails to submit a copy of a record

as required under subsection (c). However, at the relevant time, neither this section nor its substantially similar predecessor was a part of the Agriculture Code. It was repealed in 1989 and was only added back into the statute in 1993.[3]

A general statement, however, is made in TEX.AGRIC.CODE ANN. § 75.024 (Vernon 1991), stating that a person commits an offense if the person fails to keep or submit records in violation of Section 75.005 of the Agriculture Code.

Section 75.005(a) requires a dealer to make a record of each sale of the herbicide and keep a copy of that record for two years. Subsection (b) requires the Agriculture Department to adopt rules specifying the information to be kept in those records. Subsection (c) allows the Department to require that a copy of those records be submitted to the state. The Department adopted rules in 4 TEX.ADMIN.CODE § 11.7, specifying what those records should contain. Neither the statute nor the Code require the dealer to record the applicator's license number in those records that it was to retain in its files. In subsection (c), the Department required each dealer to send it a record of all sales and provided forms to be filled out and transmitted.

Thus, that form contains a blank for information that neither the Agriculture Code nor the Administrative Code required the dealer to obtain or keep in its sales records. The rule does not imply the existence of such a duty. Thus, even if we assume that the rules should be adopted as a standard for negligence per se, no violation has occurred. Appellants have not directed this Court to any other statute that limits the sale of these regulated herbicides to individuals holding an applicator's license.

Appellants also contend that it was necessary for the dealer to determine whether the purchaser had a valid permit to apply the herbicide.[4] There is no statutory or regula-

---

3. Acts 1989, 71st Leg. Regular Session 1989, ch. 230, § 131(2), eff. Sept. 1, 1989 [deleting subsection (d)]; Acts 1993, 73rd Leg., ch. 768, § 1, eff. Sept. 1, 1993 [adding the subsection back into the Code].

4. The Agriculture Code and the Administrative Code require that in certain counties regulated herbicides may only be applied by a licensed applicator who has obtained an application per-

tory requirement that a dealer ascertain whether a purchaser of any herbicide has a permit to apply that herbicide, and we will not imply the existence of such a duty.

## Negligence per se under Federal Statutory Law

**(This section is applicable only to Greenville Co-op's sale of Albaugh A–4D)**

■ Appellants also argue that the trial court erred by rendering summary judgment against their claims that Greenville Co-op violated federal statutes in regard to the sale of herbicides. Appellants specifically contend that Greenville Co-op violated 7 U.S.C.A. § 136j(a)(2)(F),(G) (West 1980 & Supp.1995). Subsection (G) makes it unlawful "to use any pesticide in a manner inconsistent with its labelling." [5] There is no allegation that Greenville Co-op used the chemicals. Greenville sold them. There is no apparent reason that the word sale should mean use.

■ Appellants also suggest that a violation is shown because the summary judgment evidence proves that Greenville Co-op sold the herbicide in a way that was not consistent with the labelling. The label for Albaugh A–4D is part of the summary judgment evidence. Appellants suggest that the seller (Northeast Texas Farmers Co-op) did not comply with the requirements stated by the label. The label states (in accordance with federal requirements) that the herbicide is "FOR SALE TO, USE AND STORAGE BY COMMERCIAL AGRICULTURAL, TURF AND LANDSCAPE PERSONNEL ONLY." Under any conceivable examination of the label, Smith Farms and its employees were clearly commercial agricultural personnel.

Despite appellants' argument about the differences between the holders of commercial and private applicators' licenses, the label does not refer to "licensed applicators" or contain any words to that effect. The term

used is "personnel." Thus, no unlawful act has been shown under the cited statute.

■ Appellants also contend that summary judgment was improperly rendered because 7 U.S.C.A. § 136j(a)(2)(F) makes it a violation

> to distribute or sell, or to make available for use, or to use, any registered pesticide classified for restricted use for some or all purposes [6] other than in accordance with section 136a(d) of this title and any regulations thereunder, except that it shall not be unlawful to sell, under regulations issued by the Administrator, a restricted use pesticide to a person who is not a certified applicator for application by a certified applicator.

7 U.S.C.A. § 136a(d)(1)(C) (West 1980) sets out the methods to be used in classifying a pesticide and states that a pesticide is classified as restricted because of

> a determination that the acute dermal or inhalation toxicity of the pesticide presents a hazard to the applicator or other persons, the pesticide shall be applied for any use to which the restricted classification applies only by or under the direct supervision of a certified applicator.

Subsection (ii) provides similar restrictions on application if the pesticide is found to be toxic or hazardous to the environment.

Each of these subsections has in common its emphasis on application. This language does not provide that it is a violation to sell the restricted item, but that it is a violation to use it in a manner not consistent with the Code. In addition, there is no question that Greenville Co-op sold the item to a company that was operated by a "licensed applicator," Eugene Smith of Smith Farms. It therefore appears that the Co-op complied with the applicable portion of the statute.

---

mit from the state to use the herbicide in that county.

5. Although "pesticide" does not equal "herbicide" in common language, as defined by the United States Code, the word "pesticide" is a general term that includes herbicides.

6. 7 U.S.C.A. § 136a(d)(1)(A) (West 1980) states that a particular chemical might be classified both for general and for restricted use. Thus, Greenville's argument that the term "purpose" means the use to which it is to be put is not viable.

**150**

### Proximate Cause

■ Even if negligence per se could be said to exist under the statutory or regulatory schemes set forth in this case, the further question is whether there is any summary judgment evidence of proximate cause. *Missouri Pacific Railroad Co. v. American Statesman*, 552 S.W.2d 99, 103 (Tex.1977). The same requirement is, of course, required to support a common-law negligence claim. *Union Pump Co. v. Allbritton*, 898 S.W.2d 773 (Tex.1995). The undisputed facts show that the only relationship between Northeast Texas Farmers Co-op, Wilbur–Ellis Company, and the damage alleged is that of acting as an intermediate seller of the item that eventually, allegedly, caused the damage to appellants. In unison, the parties contend that this is at best a philosophic cause in fact of the injuries and that proximate cause consists of cause in fact and foreseeability. *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex.1992).

■ Cause in fact means that the defendant's act or omission was a substantial factor in bringing about the injury which would not have otherwise occurred. *Allbritton*, 898 S.W.2d 773. The argument raised by the appellants in this case is directed at the same problem addressed by *Allbritton*. In that case, the court stated that "at some point in the causal chain, the defendant's conduct or product may be too remotely connected with the plaintiff's injury to constitute legal causation." *Allbritton*, 898 S.W.2d at 775. After a discussion of RESTATEMENT (SECOND) OF TORTS § 431 (1965) and *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470–72 (Tex.1991), the court held that legal cause is not established if the defendant's conduct or product does no more than furnish the condition that makes the plaintiff's injury possible. Proximate cause was similarly discussed in *Bell v. Campbell*, 434 S.W.2d 117, 122 (Tex.1968). In that case, two cars had collided and a trailer attached to one disengaged and overturned into the opposite lane. When three people were attempting to move that trailer, they were struck by another vehicle. The court held that parties to the first accident were not a proximate cause of the plaintiffs' injuries, reasoning that

[a]ll acts and omissions charged against respondents had run their course and were complete. Their negligence did not actively contribute in any way to the injuries involved in this suit. It simply created a condition which attracted [the plaintiffs] to the scene, where they were injured by a third party.

*Bell*, 434 S.W.2d at 122. Under the reasoning provided by that case, it is apparent that the allegations in this case are solely of actions that had come to rest or had ended before the activity took place that caused the injury. It is precisely accurate to say that the dealers, if negligent at all, created a condition by selling the herbicide that could then result in injury caused by a third party who negligently applied the herbicide.

Under the cause in fact analysis set out in *Allbritton*, *Bell*, and the RESTATEMENT, the circumstances surrounding the injury are too remotely connected with the third party's alleged misconduct to constitute a legal cause of the injury. These points of error are overruled.

### Nuisance and Trespass

■ Appellants further contend the trial court erred by granting summary judgment against their contentions of nuisance and trespass. A trespass to real property is committed where a person enters another's land without consent or alternatively the unauthorized entry upon the land of another. *Stone Resources, Inc. v. Barnett*, 661 S.W.2d 148 (Tex.App.–Houston [1st Dist.] 1983, no writ). The courts have uniformly held that once a plaintiff proves right of ownership of the property or a lawful right of possession, and an entry by the defendant the burden of proof falls on the defendant to then plead and prove consent or license as justification for the entry. *Stone Resources*, 661 S.W.2d at 151.

■ In this case, the issue is whether the appellees entered the property. The entry need not be in person but may be made by causing or permitting a thing to cross the boundary of a property. *Glade v. Dietert*, 156 Tex. 382, 295 S.W.2d 642, 645 (1956). There is also some authority that persons who participate in or act in concert in com-

mitting a trespass may be jointly liable. 70 TEX.JUR.3D *Trespass to Realty* § 9 (1989). However, there is no authority suggesting that a person who merely sells one item to another person is acting in concert with that person when that person eventually uses (or permits another to use) the purchased item. This point of error is overruled.

Appellants also contend the trial court erred in entering summary judgment against their claim of nuisance. A nuisance may occur in one of three different ways: (1) physical harm to property, such as encroachment of a damaging substance or by the property's destruction; (2) physical harm to a person on his or her property, such as by an assault to his or her senses or by other personal injury; and (3) emotional harm to a person from the deprivation of the enjoyment of his or her property, such as by fear, apprehension, offense, or loss of peace of mind. *Maranatha Temple, Inc. v. Enterprise Products Co.*, 893 S.W.2d 92 (Tex.App.–Houston [1st Dist.] 1994, writ denied). Counsel suggests that, as in the law of trespass, people who act in concert with those causing a nuisance may be held liable, citing 54 TEX.JUR.3D *Nuisance* § 25 (1987).

Northeast Texas Co-op and Wilbur–Ellis are clearly not primarily liable for nuisance because they were not the actors who allegedly caused the damage. Thus, even if we accept the position set out by Texas Jurisprudence as correct, we must look to see if these parties must have acted in concert with the applicator. As discussed under our review of trespass, there is no indication that any appellee acted together with Thompson Flying Service in applying the chemicals, thus any liability is based solely upon the act of selling the products.

Counsel has directed this Court to no case in which the mere sale of a nondefective item that is later used improperly by its purchaser is sufficient to show that the seller and the buyer were acting in concert so as to allow a recovery under the law of trespass or nuisance. We will not extend the range of liability to adopt this result.

**Appellants' Motion for Summary Judgment**

Appellants also contend that they proved their case as a matter of law and that the court erred by not granting summary judgment on their motion. The record contains no ruling on their motion. An order denying a motion for summary judgment is appealable if the other party's motion for summary judgment has been granted. *Jones v. Strauss*, 745 S.W.2d 898, 900 (Tex.1988); *Tobin v. Garcia*, 159 Tex. 58, 316 S.W.2d 396 (1958). In this case, there is no order denying the motion for summary judgment to be appealed from. This point of error is overruled.

The judgment of the trial court is affirmed.