**FPL FARMING LTD., Appellant,**

v.

**ENVIRONMENTAL PROCESSING SYSTEMS, L.C., Appellee.**

No. 09–08–00083–CV.

Court of Appeals of Texas, Beaumont.

Submitted May 24, 2012.

Decided Sept. 13, 2012.

Claudia Wilson Frost, Christopher J. Richart, DLA Piper LLP, Jeremy Gaston, Pillsbury Winthrop Shaw Pittman, Houston, for Appellant.

Richard G. Baker, Baker & Zbranek, P.C., Liberty, for Appellee.

Chris L. Gilbert, for The Underground Injection Technology Council.

Before McKEITHEN, C.J., GAULTNEY and HORTON, JJ.

## OPINION

HOLLIS HORTON, Justice.

Following the jury trial of a trespass case, the trial court rendered judgment on the jury's verdict for the defendant, Environmental Processing Systems, L.C., (EPS). The plaintiff, FPL Farming Ltd. (FPL) claimed that EPS trespassed onto its property by causing subsurface wastewater to migrate into the subterranean level of FPL's tracts, which are located next to a tract on which EPS operates a non-hazardous waste injection well. The jury failed to find that a trespass had occurred. Because we conclude the

charge given to the jury improperly placed the burden of proving EPS's affirmative defense of consent on FPL, we reverse the trial court's judgment and remand the case for a new trial on the trespass claim.

## I. Background

### A. Permit History before the Texas Natural Resource Conservation Commission

EPS operates a non-hazardous wastewater disposal facility in Liberty County, Texas, pursuant to permit number WDE–316. EPS's operations are subject to permits that it received from the Texas Natural Resource Conservation Commission (TNRCC).[1] Prior to the date that EPS received its initial permit, the State scheduled a hearing to address EPS's request for a permit for its well. J.M. Frost III, FPL's predecessor in title to the tracts at issue when the initial permit hearing occurred, objected to EPS's application. Before the hearing occurred, Frost withdrew his objections; in return, EPS paid him $185,000.

Approximately four and one-half years after EPS received its initial operating permit, the State altered certain restrictions governing EPS's operations, significantly increasing both the rate and volumes allowed by the initial permit. Although FPL contested EPS's proposal to change its permit, the requested changes were approved. Although FPL appealed that decision, the Austin Court of Appeals determined that the amendments would not impair FPL's existing rights, reasoning that "[t]he amended permits do not impair FPL Farming's existing or intended use of the deep subsurface." *FPL Farming Ltd. v. Tex. Natural Res. Conservation Comm'n*, No. 03–02–00477–CV, 2003 WL 247183, at *4 (Tex.App.-Austin Feb. 6, 2003, pet. denied) (mem. op.). Nevertheless, the Austin Court of Appeals expressly left open the question of whether FPL could recover damages in the event the well's waste plume entered below the surface of FPL's property, noting: "[S]hould the waste plume migrate to the subsurface of FPL Farming's property and cause harm, FPL Farming may seek damages from EPS." *Id.* at *5 (citing Tex. Water Code Ann. § 27.104 (West 2000)).[2]

Approximately five years later, FPL sued EPS, alleging that the waste plume had migrated beneath its property, and claiming that the waste plume polluted the briny water found there.

### B. Trial and Appeal

After a four day trial, the jury rejected the three claims the trial court submitted, declining to find that EPS was negligent, that EPS had trespassed, or that EPS was unjustly enriched. Based on the jury's findings, the trial court rendered a judgment in EPS's favor.

On original submission, we affirmed the trial court's judgment. *FPL Farming Ltd. v. Envtl. Processing Sys., L.C.*, 305 S.W.3d 739, 744–46 (Tex.App.-Beaumont 2009), *rev'd*, 351 S.W.3d 306 (Tex.2011). Regarding FPL's trespass claim, we held

---

1. The TNRCC changed its name to the Texas Commission on Environmental Quality (TCEQ) in 2002. See Act of May 28, 2001, 77th Leg., R.S., ch. 965, § 18.01, 2001 Tex. Gen. Laws 1933, 1985. Additionally, the year the State issued EPS a permit on the well at issue, the State issued a second permit, authorizing EPS to operate a second well to be located about 100 feet from the first. As of the date of trial, the second well had not been drilled.

2. We cite to the current version the Austin Court of Appeals cites to, we note that the current version remains unchanged. *See* Tex. Water Code Ann. § 27.104 (West 2008).

that "under the common law, when a state agency has authorized deep subsurface injections, no trespass occurs when fluids that were injected at deep levels are then alleged to have later migrated at those deep levels into the deep subsurface of nearby tracts." *Id.* at 744–45. We held that FPL failed to preserve error on its complaint that the jury's finding on unjust enrichment was against the great weight and preponderance of the evidence. *Id.* at 745. With respect to FPL's negligence claim, we held that the trial court's implied finding that FPL had not suffered an injury was not against the greater weight and preponderance of the evidence. *Id.* at 746.

FPL appealed our decision, and its petition for review was granted. The Supreme Court held a person holding a permit issued by the TCEQ was not shielded "from civil tort liability that may result from actions governed by the permit." *FPL Farming Ltd. v. Envtl. Processing Sys., L.C.,* 351 S.W.3d 306, 308, 314 (Tex. 2011). Because we erred in analyzing FPL's trespass claim, the Court remanded the case to us, instructing that we consider further the parties' arguments on FPL's claim of trespass. *Id.* at 308, 314. On remand, the Supreme Court directed that we consider all issues raised by the parties relating to FPL's trespass claim. *Id.* at 308, 315.[3]

### Trespass Claim

#### A. Standing to Sue

■ On remand, and for the first time in these proceedings, EPS argues that FPL neither proved its ownership of the subsurface rights to its property nor proved its ownership from the sovereignty of the soil. To the extent EPS asserts that FPL lacks standing, EPS may raise the issue now, despite its failure to have

presented these arguments either in the Texas Supreme Court or in the prior appeal to this court. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 445–46 (Tex.1993) (noting that standing cannot be waived and may be raised for the first time on appeal).

■ To have standing, an individual must demonstrate a particularized interest distinct from the public at large, must allege a personal injury fairly traceable to the defendant's allegedly unlawful conduct, and the injury must be likely to be addressed by the requested relief. *Brown v. Todd,* 53 S.W.3d 297, 305 (Tex.2001). EPS advances two arguments that it contends affect FPL's standing to sue.

■ First, EPS argues that FPL failed to prove a chain of title that extended to the sovereignty of the soil; without a proven chain of title, EPS concludes that FPL does not have standing to be heard. The case on which EPS relies, *Prince v. Sanders,* 298 S.W.2d 650, 651 (Tex.Civ.App.-Beaumont 1957, writ dism'd), concerned a claim to resolve who owned the property, and is inapposite. Unlike *Prince,* which involved a claim to recover title, a claim of trespass demands that a plaintiff prove that the defendant interfered with the plaintiff's right of possession; it does not require proof that the plaintiff has superior title. *See Russell v. Am. Real Estate Corp.,* 89 S.W.3d 204, 208 (Tex.App.-Corpus Christi 2002, no pet.); *Pentagon Enter. v. Sw. Bell Tel. Co.,* 540 S.W.2d 477, 478 (Tex.Civ.App.-Houston [14th Dist.] 1976, writ ref'd n.r.e.).

■ In this case, FPL placed the deeds to the tracts at issue into evidence; they show that FPL has a legal right of possession to the surface. The owner of the

3. We received amicus briefs from The Underground Injection Technology Council and the Texas Oil and Gas Association in support of EPS's appellate brief.

surface is also considered to be the owner of the water below the tract. *See Robinson v. Robbins Petroleum Corp., Inc.*, 501 S.W.2d 865, 867 (Tex.1973). Therefore, the evidence at trial was sufficient to show that FPL had a superior right to possession of the water below its tracts. We conclude that FPL has a possessory interest sufficient to demonstrate that it has standing to sue for trespass.

Second, EPS argues that FPL's deeds reflect that one of its predecessors in title reserved the right to store minerals under the subsurface of the tracts at issue; according to EPS, this reservation deprives FPL of standing on its claim of subsurface trespass.

■ Under the deeds relevant to the tracts at issue, FPL's predecessor reserved the minerals as well as "the right to use the subsurface estate from the surface down to the center of the Earth for the injection, storage, or transportation of minerals of whatsoever kind and in whatsoever manner...." The deed's reservation of a right of use is in the nature of the reservation of an easement; consequently, the fee title passes to the grantee who then has the right to exclude others from the property burdened by the easement. *See generally McCammon & Lang Lumber Co. v. Trinity & B.V. Ry. Co.*, 104 Tex. 8, 133 S.W. 247, 248–49 (1911) (concluding that the owner of land burdened by public easement could sue to restrain railway from using the easement). As FPL's deeds indicate, FPL enjoys a superior right to that of EPS, if any, to make a commercial use of the structures beneath its tracts. Also, FPL owns the water found in place, including saltwater, found below the surface of its tracts. We conclude that FPL has standing to sue EPS for trespassing on its property interests.

## B. Protection of Landowner's Rights

EPS also contends that Texas law does not recognize a claim for trespass to protect possessory rights at the depths that are at issue in this case. In our review of Texas caselaw, we have not found a case applying a theory of trespass under facts identical to those that are present here. However, in two cases, the Texas Supreme Court has, by implication, recognized that the law of trespass applies to invasions occurring on adjacent property but at a level beneath the surface. *See Gregg v. Delhi–Taylor Oil Corp.*, 162 Tex. 26, 344 S.W.2d 411, 415–16 (1961) (holding that trial court had jurisdiction to hear landowner's suit seeking to enjoin the defendant from creating subsurface fractures that would extend below the property lines of the surface owned by the landowner); *Hastings Oil Co. v. Tex. Co.*, 149 Tex. 416, 234 S.W.2d 389, 396–97 (1950) (upholding injunction against production from well that bottomed on lands owned by the Texas Company).

Assuming that Texas recognizes a trespass claim under the circumstances present here, there is evidence raising a fact issue regarding whether EPS is responsible for forcing the waste plume to travel to the subsurface of FPL's tracts. The record contains evidence that EPS's operations, over time, caused a waste plume to migrate underneath tracts that FPL owned. FPL also presented testimony that the waste plume affected the briny water in place under its property, even though it was not presently using the briny water.

Texas law recognizes the surface owners' property interest in the water in place that is found beneath the property's surface. For example, in *Edwards Aquifer Authority v. Day,* the Texas Supreme Court recognized that groundwater beneath the soil is part of the realty, and that each landowner owns it separately, dis-

tinctly, and exclusively, subject to police regulations and the law of capture. *See* 369 S.W.3d 814, 832 (Tex.2012) (stating that the law regarding ownership of oil and gas in place applies to ownership of groundwater in place). *Day* is consistent with earlier Texas law recognizing that a landowner has a property interest in water beneath the tract's surface. *See Houston & Tex. Cent. Ry. Co. v. East*, 98 Tex. 146, 81 S.W. 279, 281 (1904) (recognizing the absolute ownership rule for groundwater that a landowner captures). Addressing the ownership rights to water still in place underground, the *Day* court stated: "[W]e held long ago that oil and gas are owned in place, and we find no reason to treat groundwater differently." *Day*, 369 S.W.3d at 823. In *Day*, the Texas Supreme Court observed that an owner has the usual remedies against trespassers who appropriate such groundwater or destroy its market value. *Id.* at 832.

■ Although the water FPL alleged that EPS damaged is briny water and not fresh water, the Texas Supreme Court has held that the owner of the surface also owns the saltwater in place beneath the surface. *See Robinson*, 501 S.W.2d at 867 (concluding that saltwater is part of the surface estate). Further, absent specific language in the conveyances, water found beneath the surface of a tract is also considered to be an incident of the ownership of the surface. *Id.* Thus, with respect to the question of who owns it, saltwater is not treated any differently than fresh water.

The Legislature has also recognized the ownership interest of the surface owner to the water below the surface of his or her tract. Shortly before EPS received its initial permit, the Texas Legislature, by statute, acknowledged the landowner's ownership interest in the groundwater beneath the surface. *See* Act of May 29, 1995, 74th Leg., R.S., ch. 933, § 2, secs. 36.001, 36.002, 1995 Tex. Gen. Laws 4673, 4679–80 (sec. 36.002 amended 2001, 2005, 2011) (current version at Tex. Water Code Ann. §§ 36.001(5), 36.002 (West Supp. 2011)). Moreover, the definition of the term "groundwater," found in both the version of the Texas Water Code applicable on the date that TNRCC (now the TCEQ) first issued EPS its permits, and the current version, do not distinguish between water below the surface that is fresh water and water below the surface that is saltwater; nor did these versions distinguish between percolating water found below the ground and water found flowing in subterranean streams. Instead, the term "groundwater" is defined in the Water Code to mean "water percolating below the surface of the earth." 1995 Tex. Gen. Laws at 4679; Tex. Water Code Ann. § 36.001. Although EPS attempts to draw a distinction between ownership of fresh underground water and deep subsurface saltwater formations, such a distinction is not supported by the Texas Water Code. *See* 1995 Tex. Gen. Laws 4679–80; Tex. Water Code Ann. §§ 36.001, 36.002

EPS suggests that it should have the right to use the storage potential of the unexploited space below FPL's tracts, as the State gave it permits that allow it to dispose of the waste there. While it is true that FPL has not sought or received a permit to store non-hazardous waste beneath its property, it presented testimony to the jury that it never consented to EPS's use of FPL's property for that purpose. And, EPS's permits merely represent the TCEQ's authorization for a landowner to exercise the rights the landowner possesses by virtue of its ownership of the fee: the permits did not give EPS an ownership interest in the formations below FPL's property that are at issue in this case. *See FPL Farming*,

351 S.W.3d at 310–12. Additionally, the fact that EPS is using the deep subsurface for commercial purposes indicates that the subsurface levels at issue have economic potential for storing waste, which otherwise, absent its safe storage, has the potential to adversely affect the environment. Finally, the Legislature has not provided adjoining landowners of tracts used to inject nonhazardous waste with a right to pool their affected properties, allowing adjacent owners to obtain revenue for the commercial storage value of their subsurface. Thus, without a trespass remedy, a party—in this case, a limited partnership—does not have all of the legal remedies typically available to owners to protect the owner's right to the exclusive use of its property.

■ Allowing an adjacent landowner to proceed in trespass to protect its commercial interests extends a remedy generally available to property owners to address complaints over unauthorized uses. We conclude that Texas law recognizes FPL's property interest in the briny water underneath its property. We do not agree with EPS that no trespass action exists under Texas law to protect FPL's legal interest to its property. In light of our conclusion that FPL has a cause of action for trespass at common law, we must reach FPL's second issue, whether the instructions in the charge misplaced the burden of proving consent on FPL's trespass issue.

### C. Burden of Proving Consent

In its verdict, the jury found that EPS did not trespass on FPL's property. The court's charge instructed the jury that

> "Trespass" means an entry on the property of another without having consent of the owner. To constitute a trespass, entry upon another's property need not be in person but may be made by caus-

ing or permitting a thing to cross the boundary of the property below the surface of the earth. Every unauthorized entry upon property of another is a trespass, and the intent or motive prompting the trespass is immaterial.

In issue two, FPL asserts the trial court, through the above instruction, erroneously placed the burden of proving lack of consent on it, rather than requiring EPS to prove that FPL consented to EPS's causing or permitting the waste plume to cross the boundaries of FPL's property. Although we reach FPL's second issue, the narrow issue presented here is whether the charge failed to place the burden of proving consent on the proper party and whether that error was harmful. We expressly note that we need not decide whether all of the doctrines that apply to surface trespasses apply on the same basis to a trespass deep below the surface. *See Coastal Oil & Gas Corp. v. Garza Energy Trust*, 268 S.W.3d 1, 11 (Tex.2008) (quoting *United States v. Causby*, 328 U.S. 256, 260–61 & n. 5, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946)) ("The law of trespass need no more be the same two miles below the surface than two miles above.").

First, we address FPL's argument that the trial court committed reversible error by placing the burden of proving lack of consent on FPL rather than requiring EPS to affirmatively prove consent as an affirmative defense. The trial court instructed the jury that, in answering the questions, a " 'Yes' answer must be based on a preponderance of the evidence unless you are otherwise instructed." Based on a complete review of the entire charge, we agree that the instructions placed the burden of proving consent on FPL;[4] EPS does not argue otherwise.

4. During the charge conference, FPL objected to the instruction based on the same argu-

EPS contends that lack of consent is one of the elements of trespass the plaintiff must prove; it concludes the trial court's charge properly placed the burden of proof on FPL. It does not appear that the Texas Supreme Court has previously addressed which party bears the burden of proving consent in a case based on a claim of trespass. The seven intermediate courts of appeal that have directly addressed the question have held that the burden of proving consent is on the party who is alleged to have committed the trespass, generally the defendant, once the party in rightful possession of the property establishes that the alleged trespasser's entry onto his property was unauthorized. *See Stukes v. Bachmeyer,* 249 S.W.3d 461, 465 n. 1 (Tex.App.-Eastland 2007, no pet.); *Gen. Mills Rest., Inc. v. Tex. Wings, Inc.,* 12 S.W.3d 827, 835 (Tex.App.-Dallas 2000, no pet.); *Cain v. Rust Indus. Cleaning Serv., Inc.* 969 S.W.2d 464, 470 (Tex.App.-Texarkana 1998, pet. denied); *Ward v. Ne. Tex. Farmers Co–Op. Elevator,* 909 S.W.2d 143, 150 (Tex.App.-Texarkana 1995, writ denied); *Carr v. Mobile Video Tapes, Inc.,* 893 S.W.2d 613, 623 (Tex. App.-Corpus Christi 1994, no writ); *Stone Res., Inc. v. Barnett,* 661 S.W.2d 148, 151 (Tex.App.-Houston [1st Dist.] 1983, no writ); *S. Pine Lumber Co. v. Smith,* 183 S.W.2d 471, 472 (Tex.Civ.App.-Galveston 1944, writ ref'd w.o.m.) ("[W]here the acts of the defendant appear prima facie to be a trespass any matter of justification or excuse must be specially pleaded."); *Shell Petroleum Corp. v. Liberty Gravel & Sand Co., Inc.,* 128 S.W.2d 471, 474 (Tex.Civ. App.-Beaumont 1939, no writ) (stating that the burden rested on the defendant sued in trespass to plead justification).

EPS relies on a number of cases that it contends support its claim that FPL bore the burden of proving lack of consent;

however, in these cases, the issue the court addressed did not include a claim that the charge misplaced the burden of proving consent. *See Pilcher v. Kirk,* 55 Tex. 208, 216 (1881); *McDaniel Bros. v. Wilson,* 70 S.W.2d 618, 621 (Tex.Civ.App.-Beaumont 1934, writ ref'd); *see also Watson v. Brazos Elec. Power Coop., Inc.,* 918 S.W.2d 639, 645 (Tex.App.-Waco 1996, writ denied). In *Pilcher,* the Supreme Court addressed whether a single co-tenant may sue in trespass to try title against a stranger to the plaintiff's chain of title. *Pilcher,* 55 Tex. at 216. In *McDaniel,* the Beaumont Court of Civil Appeals addressed the liability of an employer for a trespass committed by an independent contractor. *McDaniel Bros.,* 70 S.W.2d at 621. In *Watson,* the Waco Court of Appeals addressed whether the plaintiff was entitled to have the jury instructed on a theory of negligent trespass in addition to the question that the trial court submitted on negligence. *Watson,* 918 S.W.2d at 645–46. While a definition for the term "trespasser" is noted in each of these opinions, they do not address the question of which party bears the burden of proving the plaintiff consented to the defendant's alleged entry. *See Pilcher,* 55 Tex. at 216–17; *Watson,* 918 S.W.2d at 645–46; *McDaniel,* 70 S.W.2d at 621–24.

Also, placing the burden of proof on EPS, who relies on consent to justify its entry onto FPL's property, is consistent with two principles of burden allocation: (1) the comparative likelihood that a certain situation may occur in a reasonable percentage of cases; and (2) the difficulty in proving a negative. *See 20801, Inc. v. Parker,* 249 S.W.3d 392, 396–97 (Tex.2008). Finally, placing the burden on the alleged trespasser is consistent with the Restatement (Second) of Torts, which notes that

ment that it makes on appeal.

in trespass cases "[t]he burden of establishing the possessor's consent is upon the person who relies upon it." Restatement (Second) of Torts § 167 cmt. C (1965).

 We conclude that EPS bore the burden to establish that FPL consented to the plume's presence on its tracts; as a result, we hold the trial court misplaced the burden of proof on the issue of FPL's consent.

Nevertheless, EPS also contends that regardless of where the law generally places the burden of proving consent in a trespass case, FPL assumed the burden of proving its lack of consent by alleging that EPS entered FPL's property without it. The two authorities upon which EPS relies, *Boswell v. Pannell*, 107 Tex. 433, 180 S.W. 593, 595–96 (1915), and *Young & Pratt v. Southwest Insulation & Packing Co.*, 94 S.W.2d 276, 279–80 (Tex.Civ.App.-Austin 1936, writ dism'd), were decided prior to the Texas Supreme Court's adoption of the Texas Rules of Civil Procedure in 1941. Since 1941, the Texas Rules of Civil Procedure have governed the pleading of claims, as well as the pleading of affirmative defenses to claims. *See* Tex.R. Civ. P. 47, 94. Additionally, neither *Boswell* nor *Young & Pratt* concern an issue that required the appeals court to resolve where to place the burden of proving consent in a case alleging a claim of trespass. *See Boswell*, 180 S.W. at 595–96; *Young & Pratt*, 94 S.W.2d at 279–80.

In our view, FPL's allegation that it did not consent to EPS's trespass eliminated any need for EPS to plead consent as a Rule 94 defense, nothing more. Thus, under the trial pleadings before the court, EPS could introduce evidence to show that FPL consented to the alleged trespass; but FPL's petition alleging that it did not consent to the trespass did not serve to reverse EPS's legal burden of persuasion on EPS's affirmative defense. *See Green-*

*belt Elec. Coop., Inc. v. Johnson*, 608 S.W.2d 320, 323–24 n. 5 (Tex.Civ.App.-Amarillo 1980, no writ) (noting that the defendant may rely upon an anticipated affirmative defense alleged in the plaintiff's pleading); *Raney v. White*, 267 S.W.2d 199, 200 (Tex.Civ.App.-San Antonio 1954, writ ref'd) ("When a plaintiff in his pleadings anticipates defensive matters and pleads them, a defendant may rely upon the defenses though his only pleading is a general denial."). We conclude that the charge improperly placed the burden of proving lack of consent on FPL, and the trial court should have placed that burden on EPS.

 In light of the error in the charge, we must consider whether that error probably resulted in the rendition of an improper verdict. Tex.R.App. P. 44.1(a)(1). To do so, we consider the pleadings, the evidence presented at trial, and the charge in its entirety. *Island Recreational Dev. Corp. v. Republic of Tex. Sav. Ass'n*, 710 S.W.2d 551, 555 (Tex.1986).

For reasons we discuss later, the trial judge excluded a significant amount of the evidence regarding EPS's defense of consent. Nevertheless, we conclude the record reflects that the question of FPL's consent was among the issues that were hotly disputed when the case was tried.

Much of the evidence regarding FPL's consent to entry was circumstantial. The evidence that is relevant to FPL's alleged consent to the entry of the plume includes the testimony of Ford Frost, the corporate representative of Frost Ventures, the managing partner of FPL. In the 1950s, the Frost family acquired the tracts that FPL claimed were later damaged by the waste plume. Since the Frosts acquired the tracts at issue, they have been operated as tenant farms through various family limited partnerships. Frost testified that

Frost Ventures had not consented to EPS injecting waste under FPL's land. He denied that a predecessor in interest to FPL accepted payment from EPS for the impairment of the property rights to FPL's 116 acre tract.[5] EPS built its waste injection facility in 1999, the same year that FPL purchased the 116 acre tract. While Ford Frost stated that he could not recall when FPL objected to the request by EPS to enlarge its permit, FPL's deed, unlike the other deeds in the chain of title to that tract, includes specific language reflecting the parties anticipated there were potential uses of the tract's subsurface. Thus, there is evidence that FPL intended to use the subsurface beneath its tracts.

There was also circumstantial evidence from which a jury could infer that FPL consented to the presence of the plume. The evidence before the jury reflects that FPL was aware that EPS intended to construct a waste injection well on an adjacent tract of property before EPS drilled the well. EPS spudded the injection well in 1996 and completed it in 1997. The facility was completed in 1999. While EPS was engaged in the permitting process, EPS's current manager, Clark Stegall, and his father discussed the injection well facility with Frost and his father, J.M. Frost III. According to Stegall, FPL did not object to the injection well's location.

Diane Harden handles permitting and reporting for EPS. Harden testified that the neighboring landowners, including Ford Frost, J.M. Frost III, FPL, and Frost Properties, monitored EPS's activities and knew EPS was constructing the facility. She also testified that that various Frosts and a Frost entity, Frost Properties, never told EPS not to inject waste into the well. Thus, the record contains some evidence tending to show that FPL anticipated the possibility that waste from the injection well would migrate under the surface of its tracts.

In final argument, EPS argued that FPL had not met its burden to prove its lack of consent. EPS capitalized on the evidence the trial court did admit, and argued that the evidence showed FPL was aware of its operations, FPL had delayed filing suit, and these facts indicated that FPL consented to its operating of a nonhazardous waste disposal facility. Because much of the evidence on consent was circumstantial, an argument that the party with the burden of proof in the charge failed to meet its burden strikes us as one calculated to be particularly effective.

■ Because the charge required FPL to prove an element on which it did not bear the burden of proof, because that issue was hotly contested, and because EPS used the error to its advantage in final argument, we hold the trial court's error was harmful. *See Bargsley v. Pryor Petroleum Corp.*, 196 S.W.3d 823, 830 (Tex.App.-Eastland 2006, pet. denied) (holding that error in placing the burden of proof on critical issue held to be harmful, resulting in remand). We sustain FPL's second issue.

## II. Additional Charge Error Claims

### A. Instruction on Injury

---

5. The trial court excluded details of the payment from the evidence before the jury, including an "Escrow Fund Agreement" and a letter of settlement executed on September 25, 1996, between J.M. Frost III and EPS. These documents provided for the payment of $185,000 to Frost in exchange for the withdrawal of Frost's request for a hearing before the TNRCC on EPS's initial permit requests. The trial court excluded these documents, but we understand that Frost denied only the purpose for the payment of compensation and not the fact that compensation was paid by EPS to J.M. Frost III in the course of the administrative proceeding.

In its third issue, FPL contends the trial court also erred when it refused the following instruction requested by FPL: " 'Trespass' means an entry on the property of another, even if no damage is done." FPL argues that it was entitled to the instruction because it is a correct statement of the law. *See McDaniel Bros.*, 70 S.W.2d at 621 ("[E]very unauthorized entry upon land of another is a trespass even if no damage is done or the injury is slight, and gives a cause of action to the injured party.").

However, even if FPL's instruction constitutes a correct statement of the law, instructions emphasizing certain aspects of the law, even when correctly stated, are not necessarily appropriate when included in the charge. *See Wal–Mart Stores, Inc. v. Johnson*, 106 S.W.3d 718, 723–24 (Tex.2003); *Liberty Mut. Ins. Co. v. Camacho*, 228 S.W.3d 453, 460 (Tex. App.-Beaumont 2007, pet. denied); *see also* Tex.R. Civ. P. 277 ("The court shall not in its charge comment directly on the weight of the evidence or advise the jury of the effect of their answers, but the court's charge shall not be objectionable on the ground that it incidentally constitutes a comment on the weight of the evidence or advises the jury of the effect of their answers when it is properly a part of an instruction or definition.").

In this case, the trial court could have determined that an instruction to the jury that EPS would be liable for trespass "even if no damage is done" would be viewed as nudging the jury to return a trespass finding in FPL's favor, and to do so regardless of whether FPL proved that the wastewater injected by EPS had contaminated FPL's subsurface groundwater. Because the trial court had discretion to refuse FPL's request, we hold its refusal to submit the instruction did not constitute error. We overrule FPL's third issue.

## B. Instruction on Interference with Use of Property

In a cross-issue, EPS argues the trial court erred in refusing to give the jury the following instruction: "[A]s an exception to the general rule, in the context of subsurface migration of fluids injected under permitted injection operations, the act of placing the injectate into the permitted subsurface formation is not a trespass if the act does not interfere with the adjoining property owner's reasonable and foreseeable use of his property."

In our opinion, the proposed instruction is not a substantially correct statement of the law. *See FPL Farming*, 351 S.W.3d at 312 (noting that the Injection Well Act, Chapter 27 of the Water Code, did not reflect a policy determination by the Legislature "to authorize an agency to determine ownership of the deep subsurface or determine whether authorized migration invades private property rights"). Additionally, even if the instruction is a substantially correct statement of law, trial courts are allowed to refuse instructions that have a tendency to tilt or nudge the jury one way or the other. *Lemos v. Montez*, 680 S.W.2d 798, 801 (Tex.1984).

We conclude the trial court did not abuse its discretion by declining EPS's request to include this instruction in the charge. We overrule this cross-issue.

## III. Evidentiary Issues

### A. Factual Sufficiency

FPL's brief on remand includes a factual sufficiency issue, issue four; however, FPL did not argue the issue in its brief, nor does its brief include an argument that relates to that issue. In a post-submission letter filing, FPL explained that it inadvertently included this issue in its brief on

remand. Because FPL withdrew issue four, we do not consider the issue in the proceedings on remand.

### B. Directed Verdict on Consent

In its first issue, FPL contends the trial court erred by denying FPL's motion for a directed verdict. It argues that EPS presented no evidence to support a finding on the element of consent. In a cross-issue, EPS contends the trial court erred in excluding evidence relevant to the issue of consent.

▬▬ "An appeal from the denial of a motion for directed verdict is in essence a challenge to the legal sufficiency of the evidence." *Haynes & Boone, L.L.P. v. Chason,* 81 S.W.3d 307, 309 (Tex.App.-Tyler 2001, pet. denied). On appeal, we consider only the evidence and inferences tending to support the trial court's ruling; if any evidence of probative value raises a fact issue on the material question presented, a directed verdict is improper. *Id.* Because we review a challenge to a trial court's denial of a motion for directed verdict as a challenge to the legal sufficiency of the evidence, we view the evidence in the light most favorable to the finding and indulge every reasonable inference that supports it; we credit favorable evidence if a reasonable fact-finder could, and disregard contrary evidence unless a reasonable fact-finder could not. *City of Keller v. Wilson,* 168 S.W.3d 802, 823–27 (Tex.2005); *see also Crenshaw v. Kennedy Wire Rope & Sling Co.,* 327 S.W.3d 216, 226 (Tex. App.-San Antonio 2010, pet. granted, judgment vacated by agreement.).

▬▬ If a trial court sustains a plaintiff's motion for a directed verdict on a defendant's affirmative defense, the affirmative defense is not submitted to the jury. *See* Tex.R. Civ. P. 272. No affirmative defense was submitted to the jury here, but when a party properly preserves error by objecting to an erroneous definition in the charge, we measure the legal sufficiency of the evidence supporting the jury's finding against the correct definition. *St. Joseph Hosp. v. Wolff,* 94 S.W.3d 513, 530 (Tex.2003). Thus, the issue is whether there is any evidence of probative force to raise a fact issue on consent. *See generally Bostrom Seating, Inc. v. Crane Carrier Co.,* 140 S.W.3d 681, 684 (Tex. 2004).

In addressing FPL's issue on charge error and in considering FPL's argument that the shifting of the burden of the affirmative defense of consent from EPS to FPL harmed FPL, we have considered the evidence that FPL contends relates to consent. We have also agreed with FPL that the issue was hotly contested. Also, the evidence before the jury raised a fact issue on the issue of FPL's consent, as some jurors could reasonably infer from the evidence admitted during trial that FPL expected EPS's operations would cause waste to migrate below the surface of its tracts and in face of that knowledge, FPL's predecessor withdrew its objections to the construction of the well. The circumstantial evidence that was admitted into evidence tends to show that FPL did not actively object to EPS's injection operations before it filed suit.[6] Under Texas law, consent to entry upon land is not required to be express, but it may also be apparent. *See Gen. Mills Rest.,* 12 S.W.3d at 835; *Carr,* 893 S.W.2d at 623.

In its brief, FPL concedes that consent may be implied when the owner fails to take reasonable steps to discourage entries

**6.** We recognize that FPL did object to the regulatory agency issuing amended permits, but by then the well had been drilled at con-
siderable expense to EPS. EPS's consent argument was based upon events occurring before EPS applied for amended permits.

about which the owner has actual knowledge. Although conceding that consent may sometimes be implied based on certain facts, FPL then argues that consent cannot be inferred from its silence before the trespass occurred. *See Richardson v. Lone Star Salt Co.,* 20 Tex.Civ.App. 486, 49 S.W. 647, 648 (Austin 1899, no writ). In *Richardson,* the Austin Court of Civil Appeals reasoned that it would not be reasonable to require a formal protest to the wrongdoer's conduct to avoid a presumption of consent, because "mere delay or silence, without acquiescence, will not constitute an estoppel." *Id.*

■ Acquiring a permit from the State is not sufficient to relieve a tortfeasor from his potential liability to a private property's owner. *See FPL Farming,* 351 S.W.3d at 312. However, at trial, EPS argued that acquiescence sufficient to establish consent could be implied from FPL's silence while EPS obtained a permit and expended a significant sum constructing its facility. When EPS asked to enlarge its permit, its amended permit application disclosed that the injected wastewater was projected to migrate beneath the land of nearby landowners, including the land that is in issue. There was also evidence that FPL closely monitored EPS's activity, so the jury could have inferred that FPL learned that EPS's permitted injection operations would create an underground plume that would invade FPL's premise.

■ Although meager, due to the trial court's exclusion of much of the evidence relevant to the issue of consent, the testimony allowed the jury to infer that FPL was aware that EPS permits allowed it to inject waste, and that its operations would result in the migration of the waste beneath its tracts. We conclude the testimony before the jury constitutes some evidence, more than a scintilla, to raise an issue of fact concerning FPL's implied consent to the operations conducted by EPS. We hold that FPL was not entitled to a directed verdict on the issue of consent; therefore, we overrule FPL's first issue.

### C. Excluded Evidence on Consent

In a cross-point, EPS argues the trial court erred in excluding additional evidence it offered to prove that FPL and FPL's predecessors in title consented to the lateral migration of its waste. Because we have determined that the case must be retried, we will address EPS's argument.

Although the jury learned during the trial that EPS obtained a permit before constructing the well, the trial court excluded other evidence from which a jury could infer that FPL had consented to the operation of the injection well knowing that the well's waste plume would migrate onto FPL's tracts. The evidence excluded from the jury included evidence that FPL's predecessor in title, J.M. Frost III, objected to the State's permitting EPS's injection well, and, in consideration for Frost's agreement to withdraw his objections, EPS paid him $185,000. The parties dispute whether the agreement resolving Frost's objections operated to release EPS for subsequent operations conducted under its amended permits. We note that the letter agreement concerning the payment EPS made to Frost does not contain language releasing common law damage claims. Nevertheless, the letter reflects that FPL's predecessor knew about the operations EPS intended to conduct under its original permits, and there is no definitive evidence about whether the waste plume entered FPL's water during the period EPS operated under the initial permits or afterwards. Although the jury did not consider the written documents related to the settlement which followed after J.M. Frost III withdrew his objections to EPS

receiving a permit, the documents reflect an intent to bind the parties as well as their successors and assigns to Frost's agreement.

EPS contends that the evidence the trial court excluded regarding the permitting was relevant and probative to the issue of FPL's consent. *See* Tex.R. Evid. 402. FPL argues that the evidence was irrelevant because the executed documents do not include general release language. While the circumstances surrounding the permitting procedures and the settlement between J.M. Frost III and EPS do not conclusively establish that FPL's predecessor consented to volume of waste that may have migrated beneath its tracts, the evidence regarding consent need not be conclusive to be admissible.

■ We conclude that the escrow agreement and the letter to FPL's predecessor, dated September 25, 1996, were relevant and had probative value regarding one of the disputed issues, whether FPL consented to the entry of waste beneath its tracts. *See* Tex.R. Evid. 401, 402. We hold the trial court abused its discretion by excluding this evidence.

## IV. Legal Injury

EPS argues that any trespass that might exist in this case is so trifling that FPL should not be permitted to seek redress in court. For support, EPS cites a surface trespass case in which the defendant entered onto the plaintiff's land to hunt, fired several shots, and trampled some grass. *See Mahle v. Grierson*, 2 Willson 670, 670 (Tex.Ct.App.1885). On appeal, the landowner argued he was entitled to damages as a matter of law, but the appellate court rejected his claim, applying the doctrine *de minimis*. *Id.* at 670–71.

In this case, EPS claimed that its plume did no actual harm. In contrast, FPL argued that EPS permanently polluted the water beneath its tracts. Nevertheless, whether EPS's operations had contaminated FPL's property was a contested issue, and EPS did not establish, as a matter of law, that no injury occurred. The jury did not find EPS liable (although we have also determined the jury was not properly instructed); when the jury failed to find that a trespass occurred, it did not reach the question on damages. Consequently, we are unable to determine what the jury might have awarded, if anything, had it reached the damage issue.

■ On retrial, additional evidence is likely to be presented to the jury regarding the damages that FPL attributes to the migration of EPS's plume. We decline to hold that the trespass was *de minimis* in a case where a jury might find that EPS's operations permanently damaged a natural resource, water, owned by FPL.

In summary, we hold that the trial court improperly placed the burden of proving consent to entry on FPL when that burden should have been placed on EPS. We reverse the trial court's judgment and remand the case to the trial court for a new trial.

REVERSED AND REMANDED.